## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN DOE I,
*et al.*,

        Plaintiffs,

        v.

CARLA A. HILLS, Personal Representative of
the Estate of Roderick M. Hills,

        Defendant.

Civil Action No. 15-cv-01586 (JDB)

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................1

II.   COUNTER-STATEMENT OF THE CASE ......................................................................4

    A.   Roderick Hills was directly involved in, and approved, Chiquita's illegal support for Colombian paramilitary death squads. .......................................................................4

    B.   Plaintiffs sued Mr. Hills before his death. ...............................................................6

    C.   Following Mr. Hills's death, Plaintiffs continued their suit and followed probate procedures in the District of Columbia. ...................................................................7

    D.   Plaintiffs took other measures to protect their rights in probate court. ...................8

III.  ARGUMENT ......................................................................................................................9

    A.   Plaintiffs' Complaint is for money damages from tort claims only, and was filed due to potential differences in the circumstances between the D.C. and the original New Jersey Complaints. ..........................................................................................9

    B.   Nothing in the D.C. Probate Code grants the probate court jurisdiction over tort claims against the estate, and even if it did, a state cannot limit federal court jurisdiction. .........................................................................................................11

    C.   This action is justiciable in this Court. ...................................................................13

        1.   The probate exception does not bar Plaintiffs' tort claims. ........................13

        2.   The Rooker-Feldman doctrine plainly does not apply where there is neither a state court judgment nor an effort to overturn it. ......................................14

        3.   The Anti-Injunction Act does not bar Plaintiffs' claims for damages. ........16

    D.   Plaintiffs' Complaint is duplicative of the New Jersey Complaint, but because the circumstances are different, venue transfer or a stay – not dismissal – are the appropriate courses of action. ...............................................................................17

        1.   The rule against claim-splitting applies only where dismissal of one case would have preclusive effect in the other, which is not true here. ....................18

        2.   The first-filed rule has no relevance here, because Defendant has not sought relief from the first jurisdiction, and because personal jurisdiction is disputed. ................19

    E.   Plaintiffs timely served Defendant immediately after they were able to obtain a summons. .20

    F.   Because they were filed before Mr. Hills's death, and because Plaintiffs complied with D.C. probate procedures, Plaintiffs' claims are not "forever barred." ...........................23

        1.   No bar can apply to Plaintiffs' claims, because they were filed before Mr. Hills's death, and because they are federal and Colombian law claims subject to federal jurisdiction. .....................23

        2.   D.C. probate law would not bar Plaintiffs' claims. ....................................24

            a.   Ms. Hills was well aware of Plaintiffs' claims within the relevant time period, and any deficiencies in presentation would not justify disallowance. ........................24

            b.   Plaintiffs' claims need not be presented in D.C. probate court. ....................26

    G.   This Court cannot dismiss Plaintiffs' claims due to statutes of limitations. ...........................27

1.   Because Plaintiffs' claims are tolled by the pendency of the New Jersey Complaint, the statute of limitations questions here are almost exactly the same as in the Chiquita MDL..........27

2.   Plaintiffs' claims were tolled. ......................................................................................................29

   a.   Tolling is a factual issue that cannot be resolved on a motion to dismiss. ........................30

   b.   The statutes of limitations were tolled due to the civil war in Colombia. .....................30

   c.   Mr. Hills's and Chiquita's fraudulent concealment tolls the statutes of limitations. .........32

   d.   Equitable tolling applies because Plaintiffs had no way to know about Mr. Hills's involvement.........................................................................................................................................33

3.   Plaintiffs' non-federal claims are timely as they are subject to Colombia's statute of limitations.................................................................................................................................................34

4.   Minority tolling applies to some Plaintiffs, precluding dismissal of their claims.................36

H.   The arguments raised in the Chiquita MDL are improperly incorporated by reference and should be stricken...................................................................................................................................37

IV.   CONCLUSION .....................................................................................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*A.I. Trade Finance, Inc. v. Petra Intern. Banking Corp.,*
   62 F.3d 1454 (D.C. Cir. 1995) ..............................................................................28

*Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.,*
   773 F. Supp. 2d 1317 (M.D. Fla. 2011) ...............................................................35

*Arce v. Garcia,*
   434 F.3d 1254 (11th Cir. 2006) ...................................................................... 31, 34

*Atkins v. Schmutz Mfg. Co.,*
   435 F.2d 527 (4th Cir. 1970) ................................................................................28

*Barnett v. Conn. Light & Power Co.,*
   900 F. Supp. 2d 224 (D. Conn. 2012) ..................................................................28

*Balcero v. Drummond Co., Inc.,*
   No. 2:09-cv-1041 (N.D. Ala. S.D. Jan. 17, 2012) ...............................................31

*Benedict v. Allen,*
   2001 U.S. Dist. LEXIS 26293 (D.D.C. June 14, 2001) .......................................28

*Brooks v. Von Lenthe,*
   No. 05-CV-4195, 2006 U.S. Dist. LEXIS 19946 (E.D.N.Y. Apr. 11, 2006) .......19

*Cabello v. Fernandez-Larios,*
   402 F.3d 1148 (11th Cir. 2005) ............................................................................33

*Cada v. Baxter Healthcare Corp.,*
   920 F.2d 446 (7th Cir. 1990) ................................................................................36

*Cardona v. Chiquita Brands Int'l, Inc.,*
   760 F.3d 1185 (11th Cir. Fla. 2014) .......................................................................6

*Chavez v. Carranza,*
   559 F.3d 486 (6th Cir. 2009) ................................................................................31

*Chung v. United States Dep't of Justice,*
   333 F.3d 273 (D.C. Cir. 2003) ..................................................................32, 33, 34

*Citigroup Inc. v. City Holding Co.,*
   97 F. Supp. 2d 549 (S.D.N.Y. 2000) ...................................................................19

*Clayton v. District of Columbia,*
   36 F. Supp. 3d 91 (D.D.C. 2014) .........................................................................18

*Doe I v. Unocal Corp.,*
   395 F.3d 932 (9th Cir. 2002) ................................................................................30

*Doe I v. Unocal Corp.,*
   403 F.3d 708 (9th Cir. 2005) ................................................................................30

*Doe v. Unocal Corp.,*
   963 F. Supp. 880 (C.D. Cal. 1997) ......................................................................30

*Doubt v. NCR Corp.*,
　No. C 09-5917, 2014 U.S. Dist. LEXIS 109533 (N.D. Cal. Aug. 7, 2014) ........................37

*Firestone v. Firestone*,
　76 F.3d 1205 (D.C. Cir. 1996) ...........................................................................................30

*Fludd v. United States Secret Service*,
　102 F.R.D. 803 (D.D.C. 1984) ..........................................................................................29

*Gipson v. Wells Fargo Corp.*,
　382 F. Supp. 2d 116, 122 (D.D.C. 2016)...........................................................................23

*Goza-Gonzalez v. South American Restaurants Corp.*,
　293 F.R.D. 75 (D.P.R. 2013) ....................................................................................... 21, 22

*Harper v. LG Elecs. USA, Inc.*,
　595 F. Supp. 2d 486 (D.N.J. 2009) ....................................................................................35

*Henderson v. United States*,
　517 U.S. 654 (1996)...........................................................................................................21

*Hess v. Reynolds*,
　113 U.S. 73, 76 (1885) .........................................................................................................1

*In re Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative Litig.*,
　792 F. Supp. 2d 1301 (S.D. Fla. 2011).....................................................................5, 6, 28

*In re International Administrative Services, Inc.*,
　408 F.3d 689 (11th Cir. 2005) ...........................................................................................32

*Jean v. Dorelien*,
　431 F.3d 776 (11th Cir. 2005) ...........................................................................................31

*Johnson v. Ashcroft*,
　No. 04-cv-1158, 2005 U.S. Dist. LEXIS 17961 (D.D.C. Aug. 17, 2005) ........................22

*Jones v. Brennan*,
　465 F.3d 304 (7th Cir. 2006) .......................................................................................15, 17

*Julin v. Chiquita Brands International, Inc.*,
　690 F. Supp 2d 1296 (S.D. Fla. 2010)......................................................................3, 32, 33

*Katz v. Gerardi*,
　655 F.3d 1212 (10th Cir. 2011) .........................................................................................18

*Kennedy-Jarvis v. Wells*,
　113 F. Supp. 3d 144 (D.D.C. 2015) ............................................................................ 13, 14

*Kiobel v. Royal Dutch Petro. Co.*,
　___ U.S. ___, 133 S. Ct. 1659 (U.S. 2013) ........................................................................6

*La Bruno v. Fauver*,
　109 F.R.D. 43 (N.J.D. 1985) .............................................................................................21

*Lewis v. Reconstruction Finance Corp.*,
　177 F.2d 654 (D.C. Cir. 1949) ..................................................................................... 34, 35

*Litle v. Arab Bank, PLC,*
   507 F. Supp.2d 267 (E.D.N.Y. 2007) ................................................................34

*Mann v. Castiel,*
   681 F.3d 368 (D.C. Cir. 2012) .........................................................................21

\* *Marshall v. Marshall,*
   547 U.S. 293 (2006) ................................................................................*passim*

*Martin v. Dep't of Justice,*
   488 F.3d 446 (D.C. Cir. 2007) .................................................................. 12, 13

*Miller UK Ltd. v. Caterpillar, Inc.,*
   292 F.R.D. 590 (N.D. Ill. 2013) .....................................................................37

*Nanologix, Inc. v. Novak,*
   No. 4:13-CV-1000, 2013 U.S. Dist. LEXIS 172644 (N.D. Ohio Dec. 9, 2013) ...............................20

*Pelfresne v. Williams Bay,*
   917 F.2d 1017 (7th Cir. 1990) ........................................................................16

*Queen v. Schmidt,*
   No. CV 10-2017, 2015 U.S. Dist. LEXIS 117581 (D.D.C. Sept. 3, 2015)................................. 11, 14

*Smith v. Hope Village, Inc.,*
   481 F. Supp. 2d 172 (D.D.C. 2007) ......................................................... 34, 35

*Std. Fire Ins. Co. v. Knowles,*
   ___ U.S. ___, 133 S. Ct. 1345 (2013) ...............................................................9

*Turner v. Afro-American Newspaper Co.,*
   572 F. Supp. 2d 71 (D.D.C. 2008) ..................................................................30

*Varlack v. SWC Caribbean, Inc.,*
   550 F.2d 171 (3rd Circuit. 1977).....................................................................29

*United States v. Chiquita Brands Int'l, Inc.,*
   Criminal No. 07-055 (D.D.C. Mar. 19, 2007) ...................................................32

### STATE & DISTRICT OF COLUMBIA CASES

*Dennis v. Edwards,*
   831 A.2d 1006 (D.C. 2003) ...................................................................... 15, 16

*In re Estate of Barnes,*
   754 A.2d 284 (D.C. 2000) ..............................................................................25

*In re Estate of Monge,*
   841 A.2d 769 (D.C. 2004) ........................................................................ 24, 25

*In re Estate of Phillips,*
   532 A.2d 654 (D.C. 1987) ..............................................................................25

*In re Estate of Sato,*
   878 A.2d 1247 (D.C. 2005) .............................................................................25

*Naccache v. Taylor,*
   72 A.3d 149 (D.C. 2013) ................................................................................36

*Richard v. McGreevy*,
    953 A.2d 1028 (D.C. 2008) ...........................................................................25

*Richardson v. Green*,
    528 A.2d 429 (D.C. 1987) ....................................................................... 15, 16

*Rymer v. Pool*,
    574 A.2d 283 (D.C. 1990) ...........................................................................35

## FEDERAL STATUTES

28 U.S.C. § 1367 .................................................................................................28

28 U.S.C. § 1407 .................................................................................................13

28 U.S.C. § 2283 .................................................................................................17

## DISTRICT OF COLUMBIA STATUTES

D.C. Code § 12-302 ............................................................................................36

D.C. Code § 20-704 ............................................................................................26

D.C. Code § 20-903 ....................................................................... 11, 23, 25, 26

D.C. Code § 20-905 ............................................................................................25

D.C. Code § 20-908 ............................................................................................27

D.C. Code § 20-1302 ..........................................................................................15

## FEDERAL RULES

Fed. R. Civ. P. 4 .................................................................................................21

Fed. R. Civ. P. 15 ...............................................................................................29

## DISTRICT OF COLUMBIA RULES

D.C. Super. Ct. Prob. R. 411 .............................................................................27

## TREATISES

31 Am. Jur. 2d § 1118 ..........................................................................................1

Ward et al., Wills, Trusts and Estates for the D.C. Area Practitioner (Matthew Bender) ....................25

## COLOMBIAN STATUTES

Col. Penal Code §1201 .......................................................................................35

Col. Penal Code §1121 .......................................................................................35

Col. Penal Code §0923 .......................................................................................35

## I.    INTRODUCTION

This is a damages action for tort claims. It seeks damages for the conduct of Roderick Hills, who was instrumental in helping Chiquita fund the terrorists in Colombia who murdered Plaintiffs' relatives, even though such funding was a federal crime. Since Mr. Hills has passed away, this is an ordinary tort suit against his Estate's personal representative, Defendant Carla Hills.[1] Defendant's Motion to Dismiss ("Motion," Dkt. 8), however, depends on the court accepting that this is not a tort suit at all, but instead is an appeal from a state court judgment, an equitable action seeking an injunction against probate court proceedings, or an effort to interfere in the administration of an estate. But the Complaint, which controls, shows this action is none of those things.

Defendant's principal argument is that either this case must be only about interfering with D.C. probate law, or it is merely duplicative of their complaint against Defendant currently being litigated in the Southern District of Florida and therefore must be dismissed: "A Complaint stripped of the probate matters would have to be dismissed under the rule against claim-splitting." Mot. at 13 n.2. Defendant's analysis is one-quarter right. The Complaint is not about "probate matters," and therefore is not vulnerable to any of the doctrines raised by Defendant on that score. It does present the same claims that are presented in Florida. But it is not subject to the rule against claim-splitting, because Defendant has raised defenses in Florida that do not apply here.

The fact that this is a tort action disposes of Defendant's claim that the District of Columbia has created exclusive jurisdiction for these claims. D.C. has not, and obviously could not, divest the federal courts of their jurisdiction to adjudicate tort claims, let alone federal tort claims. The fact that

---

[1] Plaintiffs refer to the Defendant as Ms. Hills, rather than the Estate, because it is the personal representative, not the estate, that may be a party to litigation. "[T]he estate of a decedent is neither a person nor a corporation. It can neither sue nor be sued." *Hess v. Reynolds*, 113 U.S. 73, 76 (1885); *see also* 31 Am. Jur. 2d § 1118 ("'Estates' are not natural or artificial persons, and they lack legal capacity to sue or be sued, and it is well settled that all actions that survive a decedent must be brought by or against the personal representative.").

1

this is a tort case also refutes Defendant's claim that "probate exception" to federal jurisdiction applies. Nothing in Plaintiffs' Complaint suggests that they are asking this Court to interfere in any way in the administration of the Hills Estate, any more than any other tort case against an estate does so.

Because there is neither a state court judgment at issue nor any attempt to overturn it, the Rooker-Feldman doctrine plainly does not apply here. Defendant's reliance on the Anti-Injunction Act is also unavailing. Plaintiffs did not file this action to enjoin proceedings in any state court. In fact, Defendant told the Probate Division that nothing implicating Plaintiffs' interests is currently ripe for resolution in the D.C. Superior Court. If so, Plaintiffs are not in the position to request this Court to enjoin D.C. state court proceedings, even if they wanted to (which they do not).

This Complaint does present the same claims as in Plaintiff's complaint, originally filed in New Jersey (and referred to as the "New Jersey Complaint"), now part of the *In re Chiquita* multidistrict litigation ("Chiquita MDL") in the Southern District of Florida. Nonetheless, Defendant's claim that this case should be dismissed as duplicative of the claims in the Chiquita MDL is rich. When Plaintiffs attempted to transfer this case to the MDL court, **Defendant** successfully objected, arguing that Plaintiffs' Complaint presented only issues of D.C. probate law. Regardless, the fact that similar claims are pending in the MDL is not grounds for dismissal, particularly since there are important differences – such as the fact that this case is not even conceivably vulnerable to the (mistaken) personal jurisdiction objection Defendant raised in the MDL. Plaintiffs have no desire to prosecute concurrent actions in multiple courts, which is why they sought to transfer this case to the Chiquita MDL, and why they now seek to transfer venue or, failing that, a stay pending the outcome of the pending motions to dismiss in the Chiquita MDL.

Defendant's claim that she was not timely served and that this case should therefore be dismissed is meritless. Plaintiffs provided Defendant with the Complaint the day that it was filed.

2

They did not provide the summons until later, but as Defendant well knows, that is because the Court would not issue the summons prior to ruling on the motion to proceed as pseudonymous plaintiffs. Serving the summons when it is issued is not a basis for dismissal.

Ms. Hills's assertion that Plaintiffs' claims are barred by the statutes of limitations is also wrong. Plaintiffs' claims were tolled for a variety of reasons, including: the active civil war in Colombia; because Chiquita and Mr. Hills actively concealed their role in causing Plaintiffs' injuries and thus that a cause of action existed against them; and because regardless of the concealment, Plaintiffs had no way to know of Mr. Hills's involvement. Indeed, in *Julin v. Chiquita Brands International, Inc.*, 690 F. Supp. 2d 1296 (S.D. Fla. 2010), the MDL court applied equitable tolling to identical facts and found there to be a question of fact that is not appropriate to address on a motion to dismiss. There is also tolling of all claims for minors.

The non-federal claims are also timely based on the application of Colombian statutes of limitations. D.C. law is clear that the wrongful death claims in this case would be governed by the Colombian limitations period, making all of those claims timely. The other non-federal claims likewise cannot be dismissed, because they may also be governed by Colombian statutes of limitations, although it is premature to decide that now.

Defendant's assertion that Plaintiffs' claims against the Estate are "forever barred" by D.C. probate law is unavailing. As she herself argues, this is not the proper venue to decide whether the disallowance of Plaintiffs' claim was justified. Regardless, she misapplies D.C. probate law, which clearly exempts claims from any such time bar if the decedent was sued before his death – as is the case here. In any event, Plaintiffs followed all applicable procedure of D.C. probate law.

Finally, Defendant presents a number of arguments that are improperly incorporated by reference from arguments in the Chiquita MDL. This Court should not consider any arguments incorporated by reference; in any event, Plaintiffs have already responded to all of these arguments.

This Court should not take Defendant's invitation to set up conflicting rulings with the Chiquita MDL court. As requested in Plaintiffs' Motion to Transfer Venue or, in the Alternative, for a Stay of Proceedings or to Strike Arguments ("Venue Transfer Mot."), judicial efficiency is best served by simply transferring this case to Judge Marra in the Southern District of Florida, who presides over the Chiquita MDL. That would resolve any objections to concurrent litigation. Failing that, the Court should stay this case pending resolution of the pending motions to dismiss in the Chiquita MDL, and in any event should not consider any merits-based objections to Plaintiffs' claims. In opposing transfer, Defendant successfully convinced the Judicial Panel on Multidistrict Litigation that no such issues would be litigated here, and she should be held to that representation.

## II.    COUNTER-STATEMENT OF THE CASE

### A.    Roderick Hills was directly involved in, and approved, Chiquita's illegal support for Colombian paramilitary death squads.

This lawsuit arises out of the admitted fact that Chiquita Brands International, Inc., illegally funded the Colombian paramilitary terrorist organization Autodefensas Unidas de Colombia (AUC) for several years, for over $1.7 million. Plaintiffs are victims of the AUC's violent abuses and relatives of individuals murdered by the AUC. Judge Marra has summarized the allegations against Chiquita:

> In or around 1995, Chiquita formed an agreement with the AUC, paying them to pacify the banana plantations and to suppress union activity. In return for Chiquita's support, the AUC agreed it would drive the guerrillas out of Chiquita's banana-growing areas and maintain a sufficient presence to prevent the guerrillas from returning. Furthermore, the AUC would provide Chiquita with security, labor quiescence, and ensure that the unions were not infiltrated by leftists sympathetic to the FARC or ELN guerrillas. This arrangement benefitted Chiquita, as labor unrest and strikes were minimized while profits increased.

> Under this agreement, Chiquita paid the paramilitaries a commission based on the number of boxes Chiquita shipped each month. During the period 1997-2004, Chiquita paid the AUC nearly every month, making over one hundred payments totaling over $1.7 million.

4

Chiquita made payments directly to the AUC or to the AUC's convivir front organizations. Chiquita concealed the nature of these payments by recording them in corporate books as payments for "security services."

Chiquita also made payments indirectly to the AUC by depositing payments into the accounts of [Chiquita's subsidiary] Banadex executives who would then withdraw cash and hand it directly to AUC representatives. Chiquita concealed these payments by recording them in corporate books as income contributions.

These payments were reviewed and approved by Chiquita's senior company executives who knew that the AUC was a violent, illegal paramilitary group. In 2003, Chiquita consulted with outside counsel, a U.S.-based law firm, regarding its ongoing payments to the AUC, which was by then a designated FTO [Foreign Terrorist Organization]. Outside counsel advised Chiquita that its payments to an FTO were illegal under U.S. law and that Chiquita should immediately stop the payments.

On April 3, 2003, Chiquita's Board of Directors agreed to disclose its AUC payments to the U.S. Department of Justice. On April 8, 2003, Chiquita instructed Banadex to continue making payments to the AUC. On April 24, 2003, Chiquita met with Justice Department officials, who told Chiquita that the AUC payments were illegal. Nonetheless, Chiquita continued paying the AUC until February 2004.

*In re Chiquita Brands Int'l, Inc., Alien Tort Statute & Shareholder Derivative Litig.*, 792 F. Supp. 2d 1301,

1309-10 (S.D. Fla. 2011).

As Plaintiffs have alleged, Roderick Hills was a Chiquita director and President of Chiquita's

Audit Committee; he had authority to approve the AUC payments and, in fact, approved nearly

$600,000 in illegal payments between 2002 and 2004. Compl. (Dkt. 1) ¶¶ 95-116. And Mr. Hills

knew the payments were going to the AUC and that the AUC "was a violent, paramilitary

organization." *Id.* ¶ 91. Indeed, Mr. Hills had the payments continue even after being told by

Chiquita's lawyers that they had to stop. *Id.* ¶¶ 117-118. Mr. Hills continued approving payments

after the Department of Justice told Chiquita that the payments were illegal and could not continue.

*Id.*[2] Indeed, Mr. Hills's response was not to stop the payments, but rather to "let [the Department of

---

[2] The Final Report of the Special Litigation Committee of Chiquita Brands International, Exhibit 12 to the Declaration of Upasana Khatri, offers even more facts to support Mr. Hills's knowledge and liability. While Plaintiffs certainly do not accept as true the conclusions and/or inferences reached by

Justice] sue us, come after us." *Id.* ¶ 118. In addition to knowingly approving the payments to the

AUC, Mr. Hills knew of and approved procedures to conceal those payments. *Id.* ¶¶ 89, 118. In

2002, executives from Chiquita's Colombian subsidiary Banadex would receive checks, recorded as

income, cash those checks, and deliver the cash to the AUC. *Id.* ¶ 89. And the terror that the AUC

visited on civilians in Colombia was open and notorious; Chiquita and Mr. Hills knew that the AUC

was murdering civilians. *See id.* ¶ 91.

### B.      Plaintiffs sued Mr. Hills before his death.

Plaintiffs originally filed the New Jersey Complaint against Chiquita and unnamed Chiquita

executives, whose identities were at the time unknown to Plaintiffs. *See* Compl. (Dkt. 1), *Doe v.*

*Chiquita Brands Int'l, Inc.*, No. 07-CV-3406 (D.N.J. July 19, 2007). Following transfer by the Judicial

Panel on Multidistrict Litigation (JPML), *In re Chiquita Brands Int'l, Inc.*, 536 F. Supp. 2d 1371

(J.P.M.L. 2008), the case has continued as part of the Chiquita MDL in the Southern District of

Florida. In 2011, Judge Marra found most of Plaintiffs' claims sufficiently alleged to proceed against

Chiquita. *In re Chiquita Brands Int'l, Inc.,* 792 F. Supp. 2d at 1359.[3]

---

the SLC, their investigation provides further detail on Mr. Hills's role. For example, there is evidence
that:

- "[T]he Audit Committee was directing the Company's actions with respect to payments." *Id.* at 96.
- That after the 2003 meeting with the Department of Justice, "payments would not have resumed without authorization from . . . Hills . . . ." *Id.*
- Mr. Hills recognized that Chiquita could have stopped paying the AUC by withdrawing from Colombia; indeed he was told by the Department of Justice that they "did not see Chiquita's case one of true duress." *Id.* at 91.

If this court finds that the current allegations are inadequate to state a claim against Mr. Hills, then
Plaintiffs request leave to amend their Complaints.

[3] While Judge Marra initially dismissed claims under Colombian law, he reversed that position in a
subsequent order. *See* Khatri Decl. Ex. 11 (Order Granting in Part and Denying in Part Plaintiffs'
Mot. for Reconsideration, Dkt. 516, *In re Chiquita Brands Int'l Inc.*, No. 08-MD-01916 (S.D. Fla. Mar.
27, 2012)). Conversely, claims under the Alien Tort Statute were subsequently dismissed by the
Eleventh Circuit following the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, ___
U.S. ___, 133 S. Ct. 1659 (2013). *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2014).

In 2012, Plaintiffs amended their complaint in the Chiquita MDL to include a number of former Chiquita officers and executives, including Mr. Hills. 2nd Amended Compl., *Does 1-11 v. Chiquita Brands Int'l, Inc.*, No 08-CV-80421, (S.D. Fla. Nov. 16, 2012) (Dkt. 589 in the Chiquita MDL, No. 08-MD-01916). Another group of plaintiffs likewise sued Mr. Hills. 3rd Amended Compl., *Does 1-144 v. Chiquita Brands Int'l, Inc.*, No 08-CV-80465 (S.D. Fla. Sept. 24, 2012) (Dkt. 575 in the Chiquita MDL, No. 08-MD-01916). Mr. Hills waived service on February 1, 2013, which was filed on February 26. Declaration of Upasana Khatri ("Khatri Decl.") Ex. 1. (The Chiquita MDL was largely stayed during this period during the pendency of an interlocutory appeal to the Eleventh Circuit.)

**C.      Following Mr. Hills's death, Plaintiffs continued their suit and followed probate procedures in the District of Columbia.**

On October 29, 2014, Mr. Hills died in the District of Columbia, but counsel did not file a Suggestion of Death in the Chiquita MDL until March 3, 2015. Khatri Decl. Ex. 2. On the same day, Plaintiffs received a Notice of Appointment of Carla Hills as a Personal Representative, which had been filed with the Probate Division of the D.C. Superior Court almost four months earlier, on November 20, 2014. *See* Exhibit 7 to the Declaration of Dimitri Portnoi ("Portnoi Decl.") (Dkt. 9-8). On June 1, 2015, Plaintiffs moved to substitute Carla Hills as a defendant in her capacity as personal representative of the estate of Roderick Hills. Portnoi Decl. Ex. 8 (Dkt. 9-9).

Plaintiffs submitted a creditor's claim to the Probate Division of the D.C. Superior Court on July 21, 2015. Portnoi Decl. Ex. 9 (Dkt. 9-10). On July 31, Plaintiffs received notice of Carla Hills's disallowance of the claim, which offered no basis for the denial. Portnoi Decl. Ex. 10 (Dkt. 9-11).

On September 28, 2015, Plaintiffs' counsel emailed Defendant's counsel letting them know that Plaintiffs would be filing a new complaint the following day, and asking if counsel would accept service for their client. Khatri Decl. Ex. 5. Counsel Dimitri Portnoi responded, "Ellen Harrison,

probate counsel for the Estate, will accept service of the complaint. She is copied on this email. As a courtesy, please copy Lee [Blalack] and me on your email transmitting the complaint." *Id.* Plaintiffs filed their Complaint electronically on September 29, 2015, and on the same day, emailed Ms. Harrison, Mr. Blalack, and Mr. Portnoi the ECF-filed copy of the Complaint. Khatri Decl. ¶ 2. On October 2, 2015, when Plaintiffs filed their motion to proceed as pseudonymous plaintiffs, Dkt. 3, Plaintiffs' counsel also emailed this motion and supporting documents to Defendant's counsel.

No summons, however, was available at that time. When cases are filed using this Court's electronic filing system, the clerk issues the summons electronically – typically the next day – and the plaintiff can retrieve the summons through a hyperlink. In this case, however, no summons was issued electronically until March 15, 2016. Dkt. 6. Plaintiffs were advised by the clerk's office that no summons would issue until after the Court ruled on Plaintiffs' motion to proceed as pseudonymous plaintiffs. Khatri Decl. ¶ 3. When that motion was granted on March 3, 2016, the clerk advised Plaintiffs to file a request for a summons, which Plaintiffs did on March 14. Dkt. 5.

Although Defendant's counsel had previously indicated that Defendant could be served through counsel, they would not accept service of the summons in this manner. On March 18, Plaintiffs' counsel again wrote to Defendant's counsel to inquire about accepting service of the summons. Khatri Decl. Ex. 6. Mr. Blalack responded that counsel could not accept service, but would only "waive service pursuant to the requirements of FRCP 4(d)." *Id.* Because Plaintiffs did not desire the delay that a Rule 4(d) waiver would occasion, counsel informed Mr. Blalack that Plaintiffs would proceed with personal service, *id.*, which was effected a few days later on March 23, 2016.

### D.     Plaintiffs took other measures to protect their rights in probate court.

Concerned that Ms. Hills might distribute the assets of the Estate and effectively avoid liability, Plaintiffs filed a motion to restrain distribution with the D.C. probate court. Portnoi Decl.

Ex. 12 (Dkt. 9-13). In her response, Ms. Hills represented that – on or about the same date as

publication of her appointment – "the assets of the Estate were distributed to Ms. Hills, personally,

and to Ms. Hills, as Trustee of The Roderick M. Hills Declaration of Trust, which is a trust that is

subject to claims of Mr. Hills's creditors to the extent the Estate is inadequate to satisfy those

claims." Portnoi Decl. Ex. 5 at 2 (Dkt. 9-6).

Upon learning that the assets of the estate had been distributed to the trust, and that the

trust was subject to the claims of Mr. Hills's creditors, Plaintiffs submitted a claim to the trust on

December 22, 2015. Khatri Decl. Ex. 7. On December 30, 2015, Ms. Hills notified Plaintiffs that the

trust had disallowed their claim. Khatri Decl. Ex. 8. On March 25, 2016, Plaintiffs filed a verified

complaint in D.C. Superior Court against Carla Hills in her capacity as the Trustee of the Hills Trust.

Portnoi Decl. Ex. 14 (Dkt. 9-15).

## III.   ARGUMENT

### A.   Plaintiffs' Complaint is for money damages from tort claims only, and was filed due to potential differences in the circumstances between the D.C. and the original New Jersey Complaints.

Defendant spends a good portion of her brief mischaracterizing Plaintiffs' Complaint and

their lawsuit. But Plaintiffs remain "the masters of their complaint[]," *Std. Fire Ins. Co. v. Knowles*, ____

U.S. ___, 133 S. Ct. 1345, 1350 (2013), and Defendant cannot rewrite it. This is a lawsuit for money

damages arising from tort claims. It is no more unusual than any other lawsuit against the personal

representative of a decedent's estate, claims of the sort that are routinely litigated in federal court.

Plaintiffs' Complaint does not:

- Seek to overturn any decision by any entity, including a state court;

- Seek any specific injunctive relief (beyond a boilerplate prayer for relief "as this
  Court deems appropriate"); or

- Seek to interfere in the administration of any estate.

Defendant's efforts to suggest that a complaint that says on its face that it is for damages for torture, extrajudicial killing, negligence, wrongful death, battery, and other torts, is **really** about interfering in probate administration, must fail.

Defendant confuses the **impetus** and **timing** of Plaintiffs' Complaint with the **claims** asserted therein. The timing of the Complaint was driven by Defendant's position that, in order to comply with D.C. probate law, Plaintiffs needed to file a new complaint following the disallowance of their claim submitted to the Hills Estate. Plaintiffs maintain that this was unnecessary, because D.C. probate rules cannot affect rights in federal court, but nonetheless did so out of an abundance of caution.[4]

The impetus for Plaintiffs' Complaint was that the Defendant had raised defenses to the New Jersey Complaint that do not apply to the instant case. In addition to her argument that Plaintiffs had not properly followed probate procedures – and thus that their claims were "prudentially moot," *see* Portnoi Decl. Ex. 15 (Dkt. 9-16) at 7, an argument that has not been repeated here – Defendant objected to the New Jersey Complaint on the basis of personal jurisdiction. *See id.* at 5. Since the Defendant lives and works in the District of Columbia, and the Estate is probated there, there could be no objection to personal jurisdiction in D.C.

Contrary to Defendant's characterizations, therefore, this suit was filed because it may become the primary vehicle for Plaintiffs' claims against Defendant. Defendant is correct that the claims here are duplicative of those in the New Jersey Complaint, but the circumstances are different. Plaintiffs are entitled to protect their rights by filing in a jurisdiction that is not subject to

---

[4] Defendant's contention that D.C. law requires that such a complaint can only be filed in D.C. Superior Court, not another court of competent jurisdiction such as this Court, is addressed below in Part III(F).

the objections raised by Defendant in the Chiquita MDL, such as an alleged lack of personal jurisdiction.

**B.** **Nothing in the D.C. Probate Code grants the probate court jurisdiction over tort claims against the estate, and even if it did, a state cannot limit federal court jurisdiction.**

This is a tort case. Indeed, it raises federal tort claims under the Torture Victims Protection Act (TVPA). No District of Columbia court, including the Probate Division, can seize jurisdiction over these claims from the federal courts and vest it exclusively in its own courts. Federal court jurisdiction, "having existed from the beginning of the Federal government, [can]not be impaired by subsequent state legislation creating courts of probate." *Marshall v. Marshall*, 547 U.S. 293, 314 (2006) (internal quotation marks omitted, alteration added by *Marshall*). "Consequently, the D.C. Superior Court's allocation of a particular category of jurisdiction to its Probate Division has no bearing on the scope of this Court's own jurisdiction." *Queen v. Schmidt*, No. CV 10-2017, 2015 U.S. Dist. LEXIS 117581, *22-23 (D.D.C. Sept. 3, 2015).

Defendant essentially concedes there is federal jurisdiction over Plaintiffs' tort claims, stating "Plaintiffs are only required to litigate their probate claims in D.C. Superior Court, not the federal claims." Mot. at 11. Instead, they argue that this case does not involve tort claims at all. That argument fails for two reasons.

First, D.C. law does not purport to create exclusive state jurisdiction. *See infra* Part F. Indeed, the D.C. Probate Code is clear that any procedures and time limitations it may impose do not affect suits filed before the decedent's death. *See* D.C. Code § 20-903(c) ("Nothing in this section [concerning the requirement to present claims] shall affect any action that was commenced against the decedent if the decedent had been duly served with process before death[.]"). When Mr. Hills died in October 2014, Plaintiffs' suit was already pending in the Southern District of Florida, and Mr. Hills had already been served. Therefore, when Plaintiffs substituted Ms. Hills as a defendant in

11

the Chiquita MDL, Plaintiffs were already in compliance with federal and D.C. requirements for preserving their claims. While Defendant appears to accept that Plaintiffs can litigate their claims in the Chiquita MDL – "Plaintiffs must litigate their federal claims in the MDL Court," Mot. at 10 – there is no difference in jurisdiction between this Court and the Southern District of Florida; if D.C. rules could somehow divest this Court of jurisdiction over federal claims, the same would be true for the Chiquita MDL court.

Second, Defendant mischaracterizes the Complaint as an action to challenge the disallowance of Plaintiffs' claims. Mot. at 8. That is a willful misreading of the Complaint, which plainly seeks damages for tort claims. Defendant's only reference to the Complaint is to a single footnote; she ignores the rest of the Complaint's 86 pages – including the actual assertion of claims and prayer for relief – and her own argument elsewhere in her Motion that the claims presented are duplicative of the New Jersey Complaint. *Id.* at 9, 19.[5] Therefore, the federal courts maintain jurisdiction over such claims notwithstanding any probate proceedings that might be in place.

In support of her contention that the Complaint was filed for probate purposes only, Defendant points to the JPML's order denying transfer. *Id.* at 8. But the JPML's comments, including its understanding of what Plaintiffs' Complaint is about, do not preclude this Court from determining its own jurisdiction. The elements of collateral estoppel – at a minimum that "the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case" and that "the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case" – are plainly lacking. *Martin v. Dep't of Justice*, 488 F.3d 446, 454 (D.C. Cir. 2007). The "issue" before the JPML was simply whether

---

[5] Defendant mischaracterizes that footnote. Its purpose was to acknowledge that this Complaint presented claims that had already been presented in another lawsuit, but was nonetheless being presented here out of an abundance of caution. Compl., n.3.

this case should be transferred to the Chiquita MDL; what claims were present in the case was not submitted for determination by the JPML, nor actually decided. Nor would the JPML be competent to decide that question. It has the power to transfer actions "for coordinated or consolidated pretrial proceedings," upon its "determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). It also may remand such actions to the transferor court, and to separate claims upon remand, *id.*, and to "prescribe rules for the conduct of its business." *Id.* § 1407(f). But it does not have the power to determine which claims are present in a complaint, which is effectively deciding a motion to dismiss. The JPML's characterizations of Plaintiffs' Complaint, which may have been based on a less-than-complete review, is in no way binding on this Court.

### C.      This action is justiciable in this Court.

#### 1.      The probate exception does not bar Plaintiffs' tort claims.

The Supreme Court has held that the "probate exception" to federal jurisdiction is narrow and only covers pure probate issues regarding administration of estates. *Marshall*, 547 U.S. at 311-12. Defendant's attempt to rely on it here is unavailing.

The question of tort claims for money damages against a personal representative of an estate is beyond the probate exception and squarely within federal court jurisdiction. In a recent decision, another judge of this Court, relying on Supreme Court precedents and that of other Circuits, noted that the probate exception is confined to three enumerated situations: suits to "(1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Kennedy-Jarvis v. Wells*, 113 F. Supp. 3d 144, 151 (D.D.C. 2015) (citing *Marshall*, 547 U.S. at 311-12). The Court further noted, "The probate exception does not apply to claims that merely impact a state court's performance of one of these tasks; rather, it applies only where a case actually requires a federal court to perform one of these specifically enumerated" acts.

*Id.* (internal punctuation and citation omitted). The court specifically held that tort claims for money damages do not fall under any of these three functions. *Id.* Even questions of trustee appointment are not covered by the probate exception. *Queen*, 2015 U.S. Dist. LEXIS 117581 at *22-23.

Defendant is right that a challenge to a distribution of estate funds would be a pure probate issue. That is why Plaintiffs filed their motion to restrain or reverse distribution of assets in the Probate Division of the D.C. Superior Court, and why they are not asking this Court for a similar remedy. Similarly, Plaintiffs filed their verified complaint against Ms. Hills as a Trustee for the Hills Trust, following her disallowance of the Plaintiffs claims, in D.C. Superior Court. But tort claims for money damages are not probate in nature; no exception to federal court jurisdiction applies here. A state court "may not reserve to its probate courts the exclusive right to adjudicate a transitory tort." *Marshall*, 547 U.S. at 297.

>        **2.      The Rooker-Feldman doctrine plainly does not apply where there is
>                neither a state court judgment nor an effort to overturn it.**

Faced with a Complaint that plainly asserts tort claims under federal jurisdiction, Defendant attempts to argue that seeking damages for claims that have been disallowed by a state-court-appointed personal representative violates the Rooker-Feldman doctrine. This position – which would presumably apply to every federal tort suit seeking damages from an estate, where a court-appointed administrator has previously refused to pay the claim – is baseless.

First, Defendant's characterization of this action as an appeal to "have the disallowance of the claim, currently docketed in the Probate Division, stricken or reversed" is inaccurate. Mot. at 15. Plaintiffs are not seeking to overturn a decision by **any** entity, much less a state court. This is just a lawsuit for damages based on tort claims including all of the substantive claims currently being litigated in the Chiquita MDL: complicity in summary execution, battery, wrongful death, etc. Thus, Defendant's invocation of the Rooker-Feldman doctrine, which Defendant concedes is appropriate

only to bar litigants from "circumventing the jurisdiction of state court systems," Mot. at 14, is misplaced. "The doctrine, which forbids a federal court other than the Supreme Court to entertain an appeal from a decision by a state court, is inapplicable when the plaintiff is not attacking a state court judgment." *Jones v. Brennan*, 465 F.3d 304, 305 (7th Cir. 2006).

Where Defendant is mistaken is in supposing that, in order to award Plaintiffs damages on their claims, this Court must "overturn" Ms. Hills's disallowance of their claim. The Court need do no such thing. The Court simply needs to award money damages – again, just like any other tort claim seeking damages against an estate.

In fact, it was Defendant who argued in the Chiquita MDL that the fact that the Estate's assets had been distributed rendered Plaintiffs' claims "prudentially moot." *See* Portnoi Decl. Ex. 15 (Dkt. 9-16) at 8-10. Defendant does not appear to be raising that argument here, which is just as well – just as this Court is not in a position to reverse any decision by the Probate Division, proceedings in probate cannot affect the viability of the instant case. After all, even if the Estate dissipates all of its assets during the pendency of Plaintiffs' tort actions, Plaintiffs may still recover monetary damages in a number of ways, such as by suing the distributees. *See* D.C. Code § 20-1302 ("After an estate has been closed, a claim not barred may be brought against one or more of the persons to whom property has been distributed."). Plaintiffs seek only remedies that this Court is qualified to provide – a judgment of liability and damages against Ms. Hills as personal representative of the Estate, based on the torts committed by Mr. Hills.

Second, even if it were necessary to "overturn" Ms. Hills's disallowance of the creditor's claim, Defendant offers no authority to support her argument that her unilateral, unsupervised disallowance of Plaintiffs' claim constitutes a state court action. Defendant cites *Richardson v. Green*, 528 A.2d 429 (D.C. 1987), and *Dennis v. Edwards*, 831 A.2d 1006 (D.C. 2003), which note in passing that a personal representative can be considered an appointee of the D.C. Superior Court's Probate

Division. But nothing in these cases – or any other source Plaintiffs have found – suggests that this appointment means that the personal representative's decisions are equivalent to court orders, any more than decisions of a court-appointed defense attorney might be. (*Richardson* was a dispute over attorneys' fees; *Dennis* is a *forum non conveniens* decision.) Surely if such an audacious proposition were true, Defendant would have been able to find some source of authority to support it.

### 3. The Anti-Injunction Act does not bar Plaintiffs' claims for damages.

Contrary to Defendant's contentions, nowhere in the Complaint do Plaintiffs assert that this action is intended to "obtain injunctive relief reversing the disallowance of claim currently on file in the Probate Division of the D.C. Superior Court." Mot. at 16. Although the Complaint includes a boilerplate prayer for "injunctive and declaratory relief as this Court deems appropriate," Compl. ¶ 382, the thrust of the Complaint is clearly not for injunctive relief. Rather, the principal remedy Plaintiffs seek is damages, and the Anti-Injunction Act "is not a bar to a suit for damages." *Pelfresne v. Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990).

Defendant fails even to identify what "current state-court proceedings" Plaintiffs are supposedly seeking to enjoin. Mot. at 15. And there are none: during a February hearing, Defendant's counsel repeatedly argued that because Plaintiffs have not yet obtained a judgment against the Estate for the underlying tort claims, the issue of whether D.C. Superior Court should restrain dissipation of the Estate's assets is not yet ripe. *See* Portnoi Decl. Ex. 13 (Dkt. 9-14) at 17, 19. If no action implicating Plaintiffs' interests can be taken by the Probate Division at present, then there are currently no state-court proceedings that this Court can enjoin.

Although Plaintiffs do not seek injunctive relief from this court at present, they may be entitled to do so in the future. If this Court or the MDL court ultimately finds Ms. Hills liable for the tort claims, Plaintiffs may be entitled to request enjoinment of D.C. probate proceedings to the extent necessary to "protect or effectuate [the] judgment[]" – a statutory exception under the Anti-

16

Injunction Act. 28 U.S.C. § 2283. But even if Plaintiffs did at some point request injunctive relief, and that contravened the Anti-Injunction Act, the remedy would be simple – denial of that relief, not dismissal of their action for damages. The Anti-Injunction Act is merely a "defense[] rather than [a] jurisdictional obstacle[]." *Jones*, 465 F.3d at 306.

### D. Plaintiffs' Complaint is duplicative of the New Jersey Complaint, but because the circumstances are different, venue transfer or a stay – not dismissal – are the appropriate courses of action.

Defendant is correct that, as to Ms. Hills, the Complaint here is duplicative of the New Jersey Complaint now being litigated as part of the Chiquita MDL in Florida. But that is not a reason for dismissal. Indeed, Defendant's protestations ring hollow, since, to the extent there is any duplicative litigation, that is a situation of Defendant's own making. Plaintiffs attempted to put this lawsuit in the **same** court as the New Jersey Complaint, precisely to avoid what Defendant now calls "overlapping or repetitive actions in different courts." Mot. at 20 (internal quotation marks omitted). But Defendant opposed coordination of this lawsuit with the Chiquita MDL, opposes transferring the venue of this action to the Southern District of Florida, and opposes staying this action pending a decision on the pending motions to dismiss in the Chiquita MDL. Defendant should not be heard to complain of being sued in multiple courts when it is Defendant, not Plaintiffs, who insists that this action proceed here.

Instead of dismissal, the Court has two viable options to prevent the potential harms of duplicative litigation. First, the Court could simply transfer venue of this suit to the Southern District of Florida, so that Judge Marra would have both cases, and there would be no risk of any duplicative or overlapping issues being decided in multiple courts. Second, the Court can stay this case until resolution of the pending motions to dismiss in the Chiquita MDL. At that point, any potential overlap between the two cases will be better-defined. Plaintiffs have no desire to proceed with litigation against Defendant in multiple courts.

### 1.    The rule against claim-splitting applies only where dismissal of one case would have preclusive effect in the other, which is not true here.

While Defendant claims that "there can be no dispute that all the elements of claim-splitting are present," Mot. at 20, Defendant fails to cite those elements – and they are **not** present.

"The usual enforcement mechanism against claim splitting is that a judgment reached in one action has a preclusive effect on the remaining action." *Clayton v. District of Columbia*, 36 F. Supp. 3d 91, 95 (D.D.C. 2014). Nonetheless, courts sometimes enforce this rule prospectively, by looking ahead to see what would happen if a judgment were reached. "To determine whether a plaintiff is claim-splitting, '[t]he proper question is whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis.'" *Id.* at 94 (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1219 (10th Cir. 2011) (alteration in original). In this case, there are at least two grounds for dismissal that Defendant has raised against the New Jersey Complaint that do not apply to the instant case.

First, Defendant has moved to dismiss the New Jersey case on the grounds of "prudential mootness," *see* Portnoi Decl. Ex. 15 (Dkt. 9-16) at 7-8. Defendant has not raised the same objection to this Complaint. And for good reason: while Defendant claimed that the New Jersey Complaint could not proceed because Plaintiffs had not followed the steps required by D.C. probate law, *see id.*, the instant suit was filed in compliance with those procedures. *See infra* Part III(F). To be clear, Plaintiffs do not believe that they were in fact required to do anything to perfect their claims beyond substituting the Estate in federal court; D.C. probate law cannot extinguish their right to litigate in federal court. Assuming Defendant is correct that Plaintiffs were required to file a new complaint after disallowance of their claim, the instant case fulfills that requirement. Any dismissal of the New Jersey Complaint on "prudential mootness" grounds would not similarly require dismissal of the instant case.

Second, Defendant objects to personal jurisdiction in the New Jersey case. *See* Portnoi Decl. Ex. 15 (Dkt. 9-16) at 1-2. But no personal jurisdiction objection has been made in this case. If the New Jersey Complaint is dismissed as to Defendant on the basis of personal jurisdiction, that would not have res judicata effect on this case. "*Res judicata* does not preclude plaintiff from bringing claims which were previously dismissed for lack of personal jurisdiction." *Brooks v. Von Lenthe*, No. 05-CV-4195, 2006 U.S. Dist. LEXIS 19946, *7 (E.D.N.Y. Apr. 11, 2006). Again, Plaintiffs believe that Defendant's personal jurisdiction objection is without merit. But if Defendant is correct that personal jurisdiction is lacking in the MDL, then the instant case would be the appropriate vehicle to prosecute Plaintiffs' claims.

> **2.    The first-filed rule has no relevance here, because Defendant has not sought relief from the first jurisdiction, and because personal jurisdiction is disputed.**

The first-filed rule also does not apply here and at most would require a stay of this action – which Plaintiffs would welcome.

The first-filed rule is a rule of **deference** to the original forum. Typically, a party objecting to duplicative actions seeks an order from the first-filed court prohibiting a party from pursuing litigation in another forum. In that case, "it is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 556 n.4 (S.D.N.Y. 2000). But Defendant has not sought any relief from Judge Marra – instead, Defendant has fought to keep this suit out of Judge Marra's court. At most, this Court should stay this action until the pending motions to dismiss in the Chiquita MDL are decided. "[C]ourts in which the second-filed actions were brought have generally refrained from ruling pending a determination by the court of first-filing." *Id.*

Moreover, a stay, rather than dismissal, is especially warranted where – as here – the first-filed suit is challenged on grounds that do not apply to the second suit (such as personal

jurisdiction), leaving open the possibility that the second suit could continue even if the first suit is dismissed. "Courts in other districts stay the second-filed case when the second-filed case, perhaps because the first-filed court lacks jurisdiction over a necessary party, 'may become the proper vehicle for resolution of the dispute.'" *Nanologix, Inc. v. Novak*, No. 4:13-CV-1000, 2013 U.S. Dist. LEXIS 172644, *11 (N.D. Ohio Dec. 9, 2013).

In *Nanologix*, a similar suit had been filed in a California federal court, but "the parties dispute[d] California's jurisdiction over NanoLogix." *Id.* at *11. In the Northern District of Ohio, however, no one argued that the court "lacks jurisdiction over any necessary party." *Id.* Despite the fact that the California suit had been filed first, the Ohio court found that "continuing to defer discovery serves no purpose," and allowed the case to continue. *Id.* at *11-12. The court simply ordered that, "should the California district court exercise personal jurisdiction over NanoLogix, the parties shall forthwith notify the Court, and the Court will then either transfer or dismiss the case pursuant to the first-to-file rule." *Id.* at *12.

While *Nanologix* provides a sound basis for this Court to proceed with this case, Plaintiffs do not think that is currently necessary. Instead, if the Court does not transfer the case to Florida, it should simply be stayed pending resolution of the motions to dismiss in the Chiquita MDL.

E.    **Plaintiffs timely served Defendant immediately after they were able to obtain a summons.**

Plaintiffs were not able to obtain a summons until March 2016, and served it eight days after it was issued. Nonetheless, Defendant had the Complaint from the day that it was filed. *See* Khatri Decl. ¶ 2. Defendant knows perfectly well the reason for the delay: that the Court would not issue the summons prior to ruling on the motion to proceed as pseudonymous plaintiffs.[6] Yet Defendant

---

[6] *See, e.g.*, Portnoi Decl. Ex. 13 (Dkt. 9-14) at 23:22-24:1 ("[T]he reason that the DDC complaint has yet to be served is because the federal court has yet to rule on our motion to proceed under

cites no case law whatsoever in support of the notion that Rule 4(m) requires dismissal where the

clerk would not issue the summons within the 120-day period, and where the defendant suffers no

prejudice. Indeed, Defendant benefited from this timing, by effectively having a 176-day extension

of time to prepare her motion to dismiss (after receiving the complaint but prior to formal service of

the summons).

Rule 4(m) requires that, upon a showing of "good cause," "the court **must** extend the time

for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added). While an extension is

mandatory if good cause is shown, courts also have "discretion to enlarge the 120-day period 'even

if there is no good cause shown.'" *Henderson v. United States*, 517 U.S. 654, 662 (1996) (quoting Fed.

R. Civ. P. 4(m) advisory committee's note).

"Good cause exists 'when some outside factor . . . rather than inadvertence or negligence,

prevented service,'" *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012) (omission in original).

Defendant has suggested no inadvertence, negligence, or lack of diligence. Good cause is likewise

present because Plaintiffs "have taken the steps which [they] might reasonably expect to have been

appropriate in order to provide for the issuance and service of" the summons. *La Bruno v. Fauver*,

109 F.R.D. 43, 44 (N.J.D. 1985). Plaintiffs inquired of the clerk's office about issuance of the

summons, and were told that it would not issue until after the Court decided their motion, at which

point Plaintiffs requested and served the summons in a timely manner.

Courts have denied Rule 4(m) dismissals where the clerk failed to issue the summons, even

where this failure resulted from an error by the plaintiffs. In *Goza-Gonzalez v. South American

Restaurants Corp.*, 293 F.R.D. 75 (D.P.R. 2013), the summons did not issue originally due to a

defective filing by the plaintiffs. They eventually corrected this, and the summons issued within the

---

pseudonyms in that court, and we cannot proceed with the case in any fashion until that motion is
ruled on.").

120-day period, but was not served until after the period expired. Because the "Plaintiffs did not unreasonably delay in curing their defective filing with the court," the court ruled that the 120-day period should run from the date the summons was issued, not from the date of filing. *Id.* at 76. Thus, because "Plaintiffs did execute service of process within 120 days from receiving the summons from the clerk's office," and because "Defendants have not argued any prejudice," the court denied the motion to dismiss. *Id.* at 76-77.

Similarly, in this case, the 120-period should run from the date the summons was issued. Indeed, the argument for good cause is far stronger here than in *Goza-Gonzalez*. Here, there is no suggestion that the delay in issuing the summons was due to an error by Plaintiffs; moreover, unlike *Goza-Gonzalez*, service could not have been accomplished within 120 days of the original filing because the summons could not have been issued during that period.

Even if the "good cause" standard were not met, the Court should exercise its discretion to allow service beyond the 120-day limit. The factors the Court may consider include: "(1) whether the defendants show any actual harm on the merits of the suit caused by the delay in service; (2) whether it is likely that the defendants received actual notice of the suit within a short time after the attempted service; and (3) whether dismissal without prejudice will effectively equal dismissal with prejudice because the statute of limitations has run after the filing of the suit." *Johnson v. Ashcroft*, No. 04-cv-1158, 2005 U.S. Dist. LEXIS 17961, *11-12 (D.D.C. Aug. 17, 2005). Defendant has shown no harm caused by the delay, and there is no question that Defendant received actual notice when the suit was filed – indeed, Defendant appeared by counsel to oppose transfer of the case to the Chiquita MDL. As for the third factor, Defendant is arguing that the statute of limitations has run; the effect of a dismissal "without prejudice" would be to further prejudice Plaintiffs' arguments about tolling of the limitation period. Plaintiffs should not bear this prejudice simply because they were waiting for the Court to rule on their motion. Because Plaintiffs have been "prosecuting this

case in a diligent manner," they "should be granted an extension." *Gipson v. Wells Fargo Corp.*, 382 F.

Supp. 2d 116, 122 (D.D.C. 2016).

> **F.      Because they were filed before Mr. Hills's death, and because Plaintiffs complied with D.C. probate procedures, Plaintiffs' claims are not "forever barred."**

Defendant's suggestion that Plaintiffs' claims are "forever barred" by the operation of D.C.

probate law is wrong for several reasons. No bar could apply to Plaintiffs' claims, because they sued

Mr. Hills before his death, and because their claims are not D.C. claims. Even if any bar did apply,

Plaintiffs complied with the appropriate D.C. probate procedures.

According to Ms. Hills, she was justified in disallowing Plaintiffs' creditors' claim, and

Plaintiffs were required to file suit in D.C. Superior Court within 60 days of this disallowance to

avoid being barred. Neither argument holds up.

> **1.      No bar can apply to Plaintiffs' claims, because they were filed before Mr. Hills's death, and because they are federal and Colombian law claims subject to federal jurisdiction.**

Defendant relies solely on D.C. Code § 20-903(a) for the proposition that Plaintiffs' claims

are barred. Tellingly, however – most tellingly, since this argument has already been raised in other

briefing – Ms. Hills fails to acknowledge subsection (c) of the very same code provision:

> **Nothing in this section shall affect any action that was commenced against the decedent if the decedent had been duly served with process before death;** provided, however, that the personal representative shall not be personally liable on account of having paid a claim or distributed assets, without taking into consideration claims prosecuted in accordance with this subsection if, at the time of payment or distribution (1) the personal representative had no actual knowledge of such claim, and (2) the claimant had not timely presented such claim in accordance with Section 20-905.

D.C. Code § 20-903(c) (emphasis added). (The latter provisions might, at most, limit Ms. Hills's

personal liability, but not her liability as personal representative.) Indisputably, Plaintiffs served Mr.

Hills with process before his death. No further action was necessary to preserve their claims.

Furthermore, D.C. probate law cannot apply to bar Plaintiffs' claims governed by federal and Colombian law. Just as state law cannot provide that claims against personal representatives must be litigated exclusively in state court, *Marshall*, 547 U.S. at 313-14, state probate law cannot provide its own statute of limitations (or similar time bar) for claims that are not created by state law – and certainly not for federal claims.

### 2.      D.C. probate law would not bar Plaintiffs' claims.

Even if D.C. probate law were able to bar Plaintiffs' claims, it would not. Defendant argues that Plaintiffs' claim was untimely and presented in a deficient manner, and therefore the personal representative was justified in disallowing it. Further, Defendant argues that only the D.C. Superior Court can hear Plaintiffs' claims. Defendant cites no case law in making these arguments, and none supports them.

### a.      Ms. Hills was well aware of Plaintiffs' claims within the relevant time period, and any deficiencies in presentation would not justify disallowance.

Defendant argues the presentation of Plaintiffs' claim in the probate process was both untimely and deficient. While Defendant's reasons for disallowing the claim have been a moving target – the initial disallowance gave no reasons at all, Portnoi Decl. Ex. 10 (Dkt. 9-11), which of course failed to allow the correction of any alleged technical defects – the Court need not address them, because D.C. law is clear that they do not invalidate Plaintiffs' claims. "[I]n administering an estate a personal representative is obliged to consider all valid claims about which [s]he has actual knowledge, even if creditors fail to comply with the statute's enumerated filing formalities." *In re Estate of Monge*, 841 A.2d 769, 774 (D.C. 2004).

First, a personal representative cannot deny a claim based on untimeliness when she had actual notice of the claim within six months of appointment. "[I]f the personal representative has actual knowledge of a claim during the statutory six-month period, the personal representative and

the court may not disallow the claim for failure to comply with all the formalities of § 20-903(a) and

§ 20-905." *In re Estate of Barnes*, 754 A.2d 284, 288 (D.C. 2000) (internal quotation marks omitted).

Here, as in *Barnes*, "[t]here can be no question that [the personal representative] was well aware of

the [Plaintiffs'] claim, and she has been unable to articulate any credible assertion of prejudice. As a

practical matter, the filing of a formal claim by the [Plaintiffs] . . . would not have provided [the

personal representative] with any information that she did not previously have." *Id.* at 289. Thus any

"technical noncompliance . . . with § 20-903(a)" is irrelevant. *Id.*

Second, a personal representative also cannot deny a claim based on allegedly deficient

presentation. While Plaintiffs maintain that their claim did comply with the technical requirements

of D.C. Code § 20-905, no D.C. case supports disallowance based on technical defects. *See In re*

*Estate of Phillips*, 532 A.2d 654 (D.C. 1987). In *Phillips*, the D.C. Court of Appeals considered whether

the court could deny a claim that "does not conform to all the formal requirements of § 20-905 (a)

and (b)." *Id.* at 655. The Court of Appeals held that because "at least one personal representative . . .

had actual notice during the statutory six-month period," there was "no basis for a discretionary

denial of that claim." *Id.* Indeed, the Court of Appeals has repeatedly stressed the personal

representative's duty – as well as the court's role, and even duty – to allow claims that were known

to the personal representative within six months of appointment, even when they were not

presented at all, let alone in a deficient manner. *See, e.g.*, *Estate of Monge*, 841 A.2d at 774; *Richard v.*

*McGreevy*, 953 A.2d 1028, 1032 (D.C. 2008); *In re Estate of Sato*, 878 A.2d 1247, 1251 (D.C. 2005).

While these cases were raised in briefing in other courts, Defendant's Motion does not address or

distinguish any of them, and cites no other cases in support.

Nonetheless, the presentation of Plaintiffs' claim was not untimely. As noted above, the six-

month period does not apply to Plaintiffs' claims because their action was commenced before Mr.

Hills's death and he was duly served with process. D.C. Code § 20-903(c); *see also* Ward et al., Wills,

Trusts & Estates for the D.C. Area Practitioner § 12.07 (Matthew Bender) ("Court action in which the decedent has been duly served with process before his death will not be affected by the limitation [of six months]"). Moreover, Ms. Hills is in a poor position to rely on timeliness arguments when she failed to follow D.C. Probate Code requirements on notifying the Plaintiffs. She was required to notify "all creditors whose identities are known or whose identities are reasonably ascertainable by reasonably diligent efforts" within 20 days of her appointment, D.C. Code § 20-704(n), but – despite admittedly knowing of Plaintiffs' lawsuit against Mr. Hills within 20 days of her appointment – Ms. Hills waited four months to notify Plaintiffs. Given this failure, the six-month period should be deemed to run from the point of notification, in which case Plaintiffs' claim was presented in a timely manner.

Nor was the presentation of Plaintiffs' claim deficient. Defendant argues that Plaintiffs' counsel needed to obtain authority from every putative class member before presenting claims on their behalf, which Defendant acknowledges would have been impossible – which amounts to the untenable argument that in D.C., it is simply impossible to bring a class action against an estate (because this would be true of every pre-certification putative class). Defendant further argues that the claim did not include the "name and address" of each claimant – which amount to the similarly untenable argument that D.C. law does not permit victims proceeding under pseudonyms to bring claims against an estate. Defendant suggests that the claim did not include sufficient information to determine the basis of the claim, but that is incorrect – the claim identified the basis as the New Jersey Complaint, which Defendant was well aware of. *See* Portnoi Decl. Ex. 9 (Dkt. 9-10). There is no serious argument that Ms. Hills did not know the basis for the claim.

**b.     Plaintiffs' claims need not be presented in D.C. probate court.**

Defendant also argues that Plaintiffs' claims are barred because they did not file a complaint

in D.C. Superior Court within 60 days of disallowance by the personal representative. But D.C. law does not in fact require claims to be filed in D.C. Superior Court – nor could it. Claims can be filed in any court of competent jurisdiction.

Defendant argues that the meaning of "the Court" in D.C. Code § 20-908(a) can only mean the Probate Division of the D.C. Superior Court. Mot. at 24. But other sources support a different interpretation. D.C.'s probate court rules specify that a notice of disallowance should state that a disallowed claim "will be barred . . . unless you file a verified complaint in the Probate Division of this Court **or other court of competent jurisdiction** within 60 days." D.C. Super. Ct. Prob. R. 411. That makes sense, of course, because – as noted above – D.C. law clearly cannot prescribe that its probate court is the exclusive forum for tort claims. *Marshall*, 547 U.S. at 314. Defendant argues that Rule 411 is merely a "formatting rule" that "cannot confer federal jurisdiction over the instant Complaint," but that argument misses the point. Mot. at 10. Plaintiffs do not need Rule 411 to **confer** federal jurisdiction. Defendant needs a rule that **ousts** federal jurisdiction. And the text of Rule 411 supports the notion that D.C. probate law was never intended to do so. Even if Defendant's interpretation of the statute is correct, and Plaintiffs did "fail[] to follow the plain language of the D.C. Probate Code," Mot. at 24-25, D.C.'s probate code cannot override a ruling of the U.S. Supreme Court.

**G.      This Court cannot dismiss Plaintiffs' claims due to statutes of limitations.**

> **1.      Because Plaintiffs' claims are tolled by the pendency of the New Jersey Complaint, the statute of limitations questions here are almost exactly the same as in the Chiquita MDL.**

Defendant presents her statute of limitation arguments as if they are specific to this case, but in fact they are almost exactly the same as in the Chiquita MDL, because that case tolled the statute of limitations. Thus, this Court should not preempt Judge Marra by ruling on these questions.

By virtue of inclusion in the New Jersey Complaint, all non-federal claims benefit from

statutory tolling under 28 U.S.C. § 1367(d), which provides that the statute of limitations for "any claim" asserted under the basis of supplemental jurisdiction "shall be tolled while the claim is pending." While Plaintiffs' claims are diversity claims, they are also supplemental jurisdiction claims.[7] And while this tolling provision is typically used when federal courts decline to exercise supplemental jurisdiction, it also applies when a second suit in federal court is brought "contemporaneously" with the original suit. *Barnett v. Conn. Light & Power Co.*, 900 F. Supp. 2d 224, 247 (D. Conn. 2012).

Plaintiffs' federal claims are likewise tolled by the New Jersey Complaint. Given "the unitary nature of the federal court system," Plaintiffs' federal claims are tolled by virtue of being filed in another federal court. *See Atkins v. Schmutz Mfg. Co.*, 435 F.2d 527, 527-28 (4th Cir. 1970) (holding federal law governs effect of identical federal case filed in another jurisdiction and tolling the statute).[8]

Thus, all claims here are assessed as if they were filed in the New Jersey Complaint.[9] The

---

[7] Defendant may note that, at one point, Judge Marra stated that he was declining to exercise supplemental jurisdiction over non-federal claims against Chiquita. *In re Chiquita Brands Int'l*, 792 F. Supp. 2d at 1356-57. He believed, at the time, that doing so would allow him to dismiss these claims, *id.*, but he subsequently agreed that the claims could not be dismissed because they were subject to diversity jurisdiction. Khatri Decl. Ex. 11 at 4-5. At no point has Judge Marra declined to exercise supplemental jurisdiction over any claims against Mr. Hills, who was added as a defendant after it was clear that there was no reason to decline the exercise of supplemental jurisdiction.

[8] The D.C. Circuit has rejected this approach to the statute of limitations for state-law claims governed by D.C. law, where section 1367(d) tolling does not apply. *Benedict v. Allen*, 2001 U.S. Dist. LEXIS 26293, *25-26 (D.D.C. June 14, 2001)(citing *A.I. Trade Finance, Inc. v. Petra Intern. Banking Corp.*, 62 F.3d 1454, 1467 (D.C. Cir. 1995) (applying D.C. law)). This is, however, entirely based on the conclusion that D.C. law does not recognize such tolling, which has no bearing on the question of whether a federal statute of limitations for a federal claim is tolled during the pendency of another federal case.

[9] At a minimum, this renders timely all of the federal claims regarding the 2004 murder of Jane Doe 4, *see* Compl. ¶ 200, under the TVPA's 10 year statute, and *all* Plaintiffs' Colombia law claims, whose shortest possible statute is ten years running from December 2002, even if no other tolling applies.

only difference between this case and the New Jersey Complaint, as to the statute of limitations, would be differences between New Jersey and D.C. law choice-of-law and statute of limitations rules; there are no differences regarding the federal claims.

Moreover, all Plaintiffs' claims against Hills in the Chiquita MDL relate back to the filing of the **original** New Jersey Complaint. Fed. R. Civ. P. 15(c). Hills does not contest relation back here, and its requirements are met. Plaintiffs' claims arise out of the same conduct giving rise to the original complaint. Mr. Hills was on notice he was being sued because, in the original complaint, Plaintiffs specifically noted they were suing key individuals, even while not knowing their names at the time. Compl. (Dkt. 1), *Doe v. Chiquita Brands Int'l, Inc.*, No. 07-cv-3406 (D.N.J. July 19, 2007). And Hills was identified as "Individual B" in the Factual Proffer in the criminal case. Compl. ¶14, which Hills must have known. In the MDL, Hills joined a brief arguing that the claims do not relate back based solely on the grounds that Plaintiffs' lack of knowledge of Mr. Hills's identity does not meet the "mistake" clause of Rule 15(c). Portnoi Decl. Ex. 16 (Dkt. 9-17) at 31-32. Although some courts have adopted that position, the Third Circuit – where the New Jersey Complaint was filed – has rejected it, finding relation back permissible where, as here, a defendant whose identity was unknown to the plaintiff was sued by pseudonym. *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977); *accord Fludd v. United States Secret Serv.* 102 F.R.D. 803, 806 (D.D.C. 1984).

But even if the New Jersey Complaint did not toll Plaintiffs' claims, they are timely for the reasons detailed below.

### 2.     Plaintiffs' claims were tolled.

The statute of limitations on Plaintiffs' claims did not begin running until at least 2007, because it was tolled during Colombia's civil conflict, under the fraudulent concealment doctrine, and by equitable tolling. Plaintiffs' claims are thus timely under the TVPA's ten-year statute of limitations. And as described in Section III.G.3, infra, their non-federal claims are similarly timely

29

under Colombia's statutes of limitations, which – according to Chiquita's Colombian law expert – extend at least ten-years.

> ### a. Tolling is a factual issue that cannot be resolved on a motion to dismiss.

The D.C. Circuit has "repeatedly held [that] courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (citations omitted). Statute of limitations issues "often depend on contested questions of fact." *Id.* Dismissal is proper "only if the complaint on its face is conclusively time-barred," *id.*, "and the parties do not dispute when the limitations period began." *Turner v. Afro-Am. Newspaper Co.*, 572 F. Supp. 2d 71, 72 (D.D.C. 2008). Once the allegations raise a question of fact regarding tolling, a motion to dismiss is precluded as a matter of law. *Julin*, 690 F. Supp. 2d at 1307.[10]

> ### b. The statutes of limitations were tolled due to the civil war in Colombia.

---

[10] *Accord Doe v. Unocal Corp.*, 963 F. Supp. 880, 897 (C.D. Cal. 1997) (denying motion to dismiss ATS claims on statute of limitations grounds because plaintiffs allegations "raised an issue of fact regarding equitable tolling"), *aff'd in part and reversed in part sub nom. Doe I v. Unocal Corp.*, 395 F.3d 932 (9th Cir. 2002), *appeal dismissed*, 403 F.3d 708 (9th Cir. 2005).

The statutes of limitations here were tolled because, until 2007, Plaintiffs were living in an active civil war zone, and/or they faced (and, indeed, may still face) reprisals for challenging the acts of the AUC. *E.g.* Compl. ¶¶ 227-29. "[E]very court that has considered the question of whether a civil war . . . constitute[s] 'extraordinary circumstances' which toll the statutes of limitations of the [Alien Tort Statute] and TVPA has answered in the affirmative." *Jean v. Dorelien*, 431 F.3d 776, 780 (11th Cir. 2005); *see also Chavez v. Carranza*, 559 F.3d 486, 493-94 (6th Cir. 2009) (applying tolling to claims arising from the civil war in El Salvador until elections, two years after peace accord); *Arce v. Garcia*, 434 F.3d 1254, 1263-65 (11th Cir. 2006) (tolling limitations for claims arising out of the El Salvador civil war until peace agreement because of the fear of reprisal).

There is no question that the civil conflict in Colombia was raging when all of the Plaintiffs' injuries occurred. Colombia did not even begin to emerge from the conflict until the Justice and Peace program was first implemented and AUC commanders began to surrender, in 2007. Addressing this identical question, the court in *Balcero v. Drummond Co.* applied equitable tolling at the pleading stage and denied defendants' motion to dismiss. The Court held:

> [T]he [Complaint] raises allegations that, taken in the light most favorable to Plaintiffs, could justify Plaintiffs' delay in filing suit. The situation in Colombia had been one of great unrest **until at least 2007**, when the AUC was demobilized. Plaintiffs have alleged that until the 2007 demobilization, the AUC "along with their collaborators in the Colombian government, and with the support of the Drummond Defendants, used violent reprisals against anyone who sought to hold them accountable for the terror imposed on the civilian population.

*Balcero v. Drummond Co., Inc.*, No. 09-CV-1041, Dkt. 275 at 6 (N.D. Ala. Jan. 17, 2012) (emphasis added) (citations omitted), Khatri Decl. Ex. 15. Just as the claims in *Chavez* and *Arce* were tolled until a peace process was sufficiently entrenched to mitigate the risk of reprisal, Plaintiffs' claims were tolled at least until this point in the Colombian peace process.

c.    Mr. Hills's and Chiquita's fraudulent concealment tolls the
statutes of limitations.

Under the doctrine of equitable estoppel, a defendant's inequitable conduct may preclude

him or her from invoking the statute of limitations. *Chung v. United States Dep't of Justice*, 333 F.3d 273,

278-79 (D.C. Cir. 2003). "Equitable estoppel takes the statute of limitations out of play for as long as

is necessary to prevent the defendant from benefitting from his misconduct." *Id.* at 279.

Such tolling applies "[w]hen a defendant's fraudulent deceptions leave a plaintiff ignorant of

the facts or even existence of his claim." *Julin*, 690 F. Supp. 2d at 1306 (quoting *In re International*

*Administrative Services, Inc.,* 408 F.3d 689, 701 (11th Cir. 2005)). Here, the statutes of limitations were

tolled because Mr. Hills, through his role in the Audit Committee, participated in Chiquita's efforts

to conceal their criminal conduct in financing the AUC, preventing Plaintiffs from discovering that

Chiquita (and its executives) were responsible for Plaintiffs' injuries. Compl. ¶¶ 87-89, 186, 224-26.

This concealment occurred at a minimum until Chiquita publicly revealed the payments when it pled

guilty to the felony of financing a designated terrorist organization in March 2007. *Id.*

Indeed, the Chiquita MDL court has already held as much, based on indistinguishable facts.

*See Julin*, 690 F. Supp. 2d at 1306-07; *see also* Factual Proffer, *United States v. Chiquita Brands Int'l, Inc.*,

Criminal No. 07-055, Dkt. 12 (D.D.C. Mar. 19, 2007).[11] The *Julin* complaint sufficiently pled

fraudulent concealment because it alleged that Chiquita hid its funding of the FARC guerrillas. 690

F. Supp. 2d at 1306-07. Plaintiffs here allege that Mr. Hills participated in the concealment of

payments to the AUC. Compl. ¶¶ 14, 51-52, 87-89, 224-26. Indeed, *Julin* recognized this, noting, as

Plaintiffs' Complaint does here, *id.*, that Chiquita hid payments to the AUC by making them through

intermediaries known as "convivirs." 690 F. Supp. 2d at 1307. Chiquita, including Mr. Hills, also

---

[11] *Available at* http://www.law.du.edu/images/uploads/corporate-governance/international-us-chiquita-factual.pdf.

implemented other procedures to hide the payments. Compl. ¶¶ 14, 88, 89. And as *Julin* further recognized, in pleading guilty to violating U.S. anti-terrorism laws, "Chiquita admitted to using many tactics similar to those [*Julin* found sufficient to allege equitable tolling with respect to its FARC payments] as a means of disguising and hiding its AUC payments." 690 F. Supp. 2d at 1303. Indeed, Chiquita's CEO admitted that Chiquita hid its payments so well that if it had not eventually admitted its crimes, no one would have found out. *Id*.[12] Given the ten-year statute of limitations, the limitations period for Plaintiffs' TVPA claims could not run, at a minimum, until March 2017, ten years after Chiquita pled guilty.

And Mr. Hills's concealment of his own involvement continued long past Chiquita's. He was described anonymously in the Chiquita's guilty plea. For him, the statute of limitations actually did not begin to run until February, 2009, when the report of Chiquita's Special Litigation Committee was filed in the MDL, revealing Mr. Hills's involvement. Prior to this, Hills had not publicly disclosed his role in financing the AUC.

> **d.     Equitable tolling applies because Plaintiffs had no way to know about Mr. Hills's involvement.**

Equitable tolling applies when the plaintiff "despite all due diligence . . . is unable to obtain vital information bearing on the existence of his claim." *Chung*, 333 F.3d at 278-79. Unlike estoppel, the "similar" but "distinct" equitable tolling doctrine does not require concealment. It focuses on the **plaintiffs'** circumstances, and applies even where the defendant is "innocent" of causing the statute of limitations to run. *Id*. at 278-79. Equitable tolling "ensures that the plaintiff is not, by dint of circumstances beyond his control, deprived of a reasonable time in which to file suit." *Id*. at 279.

---

[12]Although Hills participated in this concealment, Complaint ¶¶ 14, 27, 29, 88, 224, he need not have done so; concealment by a co-conspirator, like Chiquita, is sufficient. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005).

The doctrine protects a plaintiff who "knows he has been injured, but is unaware that his injury may be the result of possible misconduct by the defendant." *Id.*

While Defendant asserts that a TVPA claim accrues at the time of the abuse, regardless of whether plaintiff knew the defendant's identity, the authority cited is inapposite. Mot. at 25 (citing *Litle v. Arab Bank, PLC*, 507 F.Supp.2d 267, 274 (E.D.N.Y. 2007)). What *Litle* actually held was that the complaints themselves showed that Plaintiffs could have earlier discovered the defendant's involvement. 507 F. Supp. 2d at 274-75. Regardless, *Litle* distinguished accrual from equitable tolling, which applies once a claim has accrued. *Id.* And as the Eleventh Circuit has held, equitable tolling applies to the TVPA; indeed, Congress provided explicit guidance in the TVPA that tolling should apply where "the plaintiff has been unable to discover the identity of the offender." *Arce*, 434 F.3d at 1261-62 (quoting S. Rep. No. 102-249, at 10-11).

Until Chiquita pled guilty and disclosed that it had been financing the AUC, Plaintiffs were unaware, and had no means to become aware, even of Chiquita's involvement. Compl. ¶¶224-26. And until the SLC Report was filed, Plaintiffs were unaware, and had no means to become aware, of Mr. Hills's identity and his role in financing the AUC. Under *Chung* and *Arce*, that tolls the statute.

### 3. Plaintiffs' non-federal claims are timely as they are subject to Colombia's statute of limitations.

The deaths at issue here occurred in Colombia. Under D.C. law, the applicable statute of limitation derives from Colombian law. Where "rights of action of a purely statutory nature" are at issue, the statute of limitations is substantive, not procedural. *Lewis v. Reconstruction Fin. Corp.*, 177 F.2d 654, 656 (D.C. Cir. 1949); *accord Smith v. Hope Vill., Inc.*, 481 F. Supp. 2d 172, 205-06 (D.D.C. 2007). Since wrongful death is a statutory claim, and since "[D.C.'s] wrongful death statute, and the limitations thereof[,] are confined to deaths resulting from injuries suffered within the District of Columbia," D.C. courts apply the statute of limitations from the jurisdiction where the death

34

occurred. *Lewis*, 177 F.2d at 656; *accord Smith*, 481 F. Supp. 2d at 205-06. Defendant's contention to the contrary simply ignores that applicable law.

The same may also be true for Plaintiffs' other non-federal claims. Colombia is a civil law country in which claims are governed by codes; all Colombia law claims are statutory. So if Colombia law applies, so too do Colombian statutes of limitations. The MDL court has held that all of Plaintiffs' non-federal claims are governed by Colombia law. *See* Khatri Decl. Ex. 11 at 4-5. If this Court were to consider that question anew, the District's choice-of-law rules require a fact-dependent, multi-factor analysis. *Rymer v. Pool*, 574 A.2d 283, 285 (D.C. 1990).[13] Such an analysis is premature at the motion to dismiss stage. *See, e.g., Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009); *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011). Accordingly, even if the Court decides that Plaintiffs' claims are not timely under D.C. law, it should not dismiss at this stage because Colombian law either applies to these claims or the question of whether Colombian law is not appropriate to resolve at this point.

There is no question Plaintiffs' claims are timely under Colombia law. Where a civil action arises from criminal acts, the criminal statute of limitations prescribes the civil limitations period. *See* Col. Penal Code § 1121, art. 98, Khatri Decl. Ex. 10. For torture, this period is 30 years; for killings, 20 years. *See id.* § 0923, art. 83; §1201, art. 103. Since the earliest claims arose in 1997, Compl. ¶¶ 197, 207, all of the claims are timely.

According to Chiquita's Colombian law expert, whose opinion the Defendant has adopted, *see* Portnoi Decl. Ex. 15 at 2 (adopting Chiquita MDL Dkt. 741), where the injury occurred before December 27, 2002, the general tort statute of limitations is either 20 years beginning with the

---

[13] D.C. choice-of-law rules consider the relevant policies of each jurisdiction and which jurisdiction's policy would be most advanced by having its law applied; the place of the injury, where the conduct causing the injury occurred and the parties' nationality or domicile. *Rymer*, 574 A.2d at 285.

appearance of the injury or 10 years from December 27, 2002. *See* Khatri Decl. Ex. 9 ¶ 28.[14] For

injuries after December 27, 2002, a 10-year period applies. *Id.* All of the murders here, except that of

Jane Doe 4 in 2004, were committed before December 27, 2002, and since the earliest were in 1997,

all Plaintiffs filed within 20 years. Even assuming the period is 10 years for all plaintiffs, all claims are

timely both because all statutes were tolled until 2007 and because they were tolled as of the filing of

the New Jersey Complaint against Hills in November, 2012. *See* Part III(G)(1) & (2), *supra*.

###### 4.     Minority tolling applies to some Plaintiffs, precluding dismissal of their claims.

Four of the Plaintiffs were minors when the New Jersey Complaint was filed in

2007. *See* Compl. ¶ 9. Under D.C. law, the statute of limitations is tolled for minors. *See* D.C. Code §

12-302 (2015); *Naccache v. Taylor*, 72 A.3d 149, 152 (D.C. 2013). Minority tolling also applies to the

TVPA by virtue of its incorporation in federal common law. *Cada v. Baxter Healthcare Corp.*, 920 F.2d

446, 450 (7th Cir. 1990) (noting that under federal common law, plaintiff's incapacity tolls). Since the

TVPA has a ten-year statute of limitations, and Colombia has a minimum of ten years, all of their

claims are unquestionably timely. And while these Plaintiffs' claims are timely as measured from

2007, in fact each did not reach majority until some varying number of years later. The precise

dates cannot be resolved on a motion to dismiss without the benefit of additional evidence outside

the Complaint. Other plaintiffs and class members, whose ages are not asserted in the Complaint,

may also benefit from minority tolling if they were minors at the time of the injury; that also cannot

be resolved on a motion to dismiss without the benefit of additional evidence outside the

Complaint.

---

[14] Chiquita's expert claims that a defendant has the right to choose which limitations period applies. Khatri Decl. Ex. 9. Plaintiffs dispute that the defendant, rather than the plaintiff, has the right to decide.

### H.   The arguments raised in the Chiquita MDL are improperly incorporated by reference and should be stricken.

Ms. Hills makes five arguments at the end of her brief, each of which is a single sentence referring to briefing in the Chiquita MDL. Mot. at 26-27. While in some places she indicates that she "reserves the right" to raise these issues, *id.* at 26, she also says she "asserts these defenses here." *Id.* at 27. The Court should not consider these arguments.

First, as set forth in Plaintiffs' Venue Transfer Motion, at 8-9, Defendant is precluded from raising these arguments by judicial estoppel.

Second, as noted in Plaintiffs' Response to Defendant's Request for Judicial Notice, Dkt. 10, seeking to "incorporate by reference" legal arguments "via [a] request for judicial notice" is improper. *Doubt v. NCR Corp.*, No. C 09-5917, 2014 U.S. Dist. LEXIS 109533, *11-12 (N.D. Cal. Aug. 7, 2014); *see also Miller UK Ltd. v. Caterpillar, Inc.*, 292 F.R.D. 590, 592-93 (N.D. Ill. 2013) (collecting cases).

Third, as Defendant notes, these arguments have already been raised to Judge Marra in the Southern District of Florida. This Court should not risk inconsistent rulings by considering these arguments before Judge Marra has decided the pending motions to dismiss.[15]

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

///

///

///

---

[15] If the Court does consider these arguments, they are meritless, as shown in Plaintiffs' responses, on file in the Chiquita MDL as Docket Nos. 821, 826, 832, & 929. Plaintiffs will re-file these with this Court on request, but the filings are voluminous and Plaintiffs otherwise do not wish to clutter the docket.

Plaintiffs respectfully request oral argument on this Motion.

Dated: May 2, 2016                    Respectfully submitted,

                                      _/s/ Marco Simons_____
                                      Marco Simons (D.C. Bar No. 492713)
                                      EARTHRIGHTS INTERNATIONAL
                                      1612 K St. NW Suite 401
                                      Washington, DC 20006

                                      *Counsel for John Doe I*, et al.