**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN DOE I, *et al.*,

      Plaintiffs,

      v.

CARLA A. HILLS, Personal
Representative of the Estate of Roderick M.
Hills,

      Defendant.

Civil Action No. 15-1586 (JDB)

<u>MEMORANDUM OPINION & ORDER</u>

Currently pending before the Court is [8] defendant Carla Hills' motion to dismiss this complaint.  This is a case brought by Colombian nationals against defendant Carla Hills in her capacity as representative of the estate of Roderick M. Hills, who served as a member of the board of directors of Chiquita Brands International, the banana producer, prior to his death in 2014.  The complaint alleges that between 1995 and 2004, Chiquita made nearly $1.7 million in protection payments, with Mr. Hills' authorization, to a violent paramilitary organization known as the Autodefensorias Unidas de Colombia ("AUC"), which the United States designated as a terrorist organization in 2001.  Compl. [ECF No. 1] ¶¶ 1, 83–87, 91.  In exchange for the payments, the AUC allegedly agreed to keep the banana-growing regions in which Chiquita operated free of labor opposition, social unrest, and leftist rebel groups and sympathizers.  <u>Id.</u> ¶ 1, 90, 168–70.

The plaintiffs in this case are victims of the AUC or family members of victims who were killed by the AUC.  They allege that the payments made by Chiquita enabled the AUC to carry out a violent campaign of kidnapping, torture, and murder against the largely civilian population in

Colombia's banana growing regions.  The plaintiffs bring damages claims under the Alien Tort Statute (ATS), the Torture Victims Protection Act (TVPA), state tort law, customary international law, and Colombian tort law.  The Court has jurisdiction under 28 U.S.C. §§ 1332, 1350, and 1367. For the reasons that follow, the defendant's motion to dismiss is denied, and this case will be stayed pending further developments in the proceedings in the multi-district court litigation against Chiquita currently ongoing in the Southern District of Florida.[1]

## I. <u>BACKGROUND</u>

Because this case is entangled with the multi-district litigation against Chiquita and the Hills estate pending in federal court in Florida ("the MDL case"), a brief discussion of both is in order.  In March 2007, Chiquita pled guilty to one count of engaging in transactions with a Specially Designated Global Terrorist, the AUC, in violation of 50 U.S.C. § 1705(b).  <u>See</u> Plea Agreement, <u>United States v. Chiquita Brands Int'l</u>, No. 7-CR-55 (RCL) (D.D.C.) [ECF No. 11] ¶ 1.  Shortly thereafter, the plaintiffs in this case filed a complaint against Chiquita in the District of New Jersey ("the New Jersey complaint"); that action was consolidated with eight other cases brought in D.C., Florida, and New York into a multi-district litigation in the Southern District of Florida.  <u>See</u> MDL Order on Consolidated Mot. to Dismiss [ECF No. 28-2] at 4 (recounting the procedural history of the MDL case).  The New Jersey complaint alleged identical claims to those alleged here, but the case was initially brought only against Chiquita.  These claims were litigated in the MDL court in Florida for about four years before the plaintiffs amended their complaint to name various Chiquita directors and officers as individual defendants, including board member

---

[1] There is also an outstanding motion to transfer or stay this case, and an outstanding motion for judicial notice in support of the opposition to the motion for transfer.  <u>See</u> Mot. to Transfer [ECF No. 12]; Mot. for Judicial Notice [ECF No. 22].  In their June 2016 supplemental briefing, the plaintiffs argued that the motion to transfer was "no longer relevant" in light of intervening events in the MDL case.  Pls.' Supp. Br. (June) [ECF No. 28] at 4. Accordingly, these motions will be DENIED as moot.

Roderick M. Hills, who served as head of the audit committee.  The amended complaints asserted similar claims against these individual defendants, alleging that they authorized and/or facilitated Chiquita's payments to the AUC.  Id. at 4–7.  Before Hills was a party, however, the case was stayed pending Chiquita's interlocutory appeal to the Eleventh Circuit, so Hills never filed a response to the complaint before his death in October 2014.  Mot. to Dismiss [ECF No. 8-1] at 3–4.

Following Hills' death, the Probate Division of the D.C. Superior Court appointed Carla Hills, the decedent's widow, as personal representative of his estate in November 2014.  Id. at 4.  In June 2015, the plaintiffs moved to substitute Hills' estate as a defendant in the MDL case.  The next month, as part of the probate proceedings, the plaintiffs presented a creditor's claim to the estate for $18.5 billion, which the estate disallowed.  Id. at 5.  The plaintiffs then filed the instant complaint in federal court against Carla Hills in her capacity as the estate's representative.  Id. at 6.  Both parties agree that the instant complaint is identical to the New Jersey complaint currently being litigated in the MDL case, but for the fact that the sole defendant is Carla Hills in her capacity as the representative of her husband's estate, and but for a footnote on page 3 that notes that the complaint was filed "out of an abundance of caution" to ensure that any future judgment is enforceable against the estate.  Compl. [ECF No. 1] at 3 n.3; Mot. to Dismiss [ECF No. 8-1] at 6.  The defendant filed this motion to dismiss in response, arguing that the complaint is either an ill-advised attempt to challenge the disallowance of the probate claim in federal court or duplicative of the New Jersey complaint already being litigated in the MDL action.[2]  The Court will address each argument in turn.

---

[2] The MDL court, meanwhile, issued a decision in June 2016 granting in part and denying in part the defendants' consolidated motion to dismiss, but specifically reserving judgment on the claims against the Hills estate, pending this court's decision on the motion to dismiss the instant complaint.  The MDL court "[o]bserv[ed] that some of the same probate arguments have apparently been lodged in . . . Does v. Hills" and concluded that it would "defer

## II. DISCUSSION

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The Court must take all allegations in the complaint as true, and draw all reasonable inferences in the plaintiffs' favor.  See Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 525 F.3d 8, 15 (D.C. Cir. 2008).  Here, the arguments raised with respect to dismissal have less to do with the factual content of the complaint and much more to do with the procedural tangle presented by this case, given the related litigation in the MDL case and the ongoing probate of the Hills estate in the D.C. Superior Court.  The defendant argues, first, that this complaint was filed in order to improperly challenge the estate's disallowance of the probate claim, in violation of the Rooker-Feldman doctrine, the Anti-Injunction Act, and the probate exception to federal jurisdiction.  Second, the defendant argues that the complaint is duplicative of the New Jersey complaint and must be dismissed under the first-filed rule.  Finally, the defendant argues that dismissal is required because she was not timely served with the complaint and the summons as required by Federal Rule of Civil Procedure 4(m).

### A. "PROBATE" CLAIM

The defendant spends much of her briefing arguing that the plaintiffs' complaint improperly raises some kind of "probate" claim or attempts to challenge the representative's decision to disallow the creditor's claim that the plaintiffs brought against the estate in the probate

---

to the ruling of the D.C. Court on any overlapping probate issues," and would reserve "ruling on the Estate's motion to dismiss the amended complaints pending resolution of those issues in the D.C. litigation."  MDL Order on Consolidated Mot. to Dismiss [ECF No. 28-2] at 6–7 n.9.  Hence, resolution of the defendant's motion to dismiss is not only necessary for this case, but appears to be needed to allow the claims in the MDL court against the Hills estate to move forward.

court.  At the outset, it is worth noting that the only mention of probate or probate proceedings in

the complaint appears in footnote 3, which states in relevant part:

> To ensure that any future judgment against Mrs. Hills/the Decedent would be
> enforceable against the Decedent's estate, Plaintiffs filed a creditor's claim in
> D.C. Superior Court's Probate Division, which Mrs. Hills disallowed on July 23,
> 2015.  The D.C. Probate Code requires that following a disallowance, a claim
> be filed in the D.C. Superior Court [or] another court of competent jurisdiction.
> Although plaintiffs believe that their existing complaint against Chiquita and
> others fulfills this requirement, out of an abundance of caution, Plaintiffs submit
> this Complaint, which has been modified to name only Carla Hills as the
> Defendant.

Compl. [ECF No. 1] at 3 n.3.  The actual <u>claims</u> asserted in the body of the complaint, however,

are tort claims brought under the ATS, the TVPA, and state and Colombian tort law, identical to

those claims being litigated before the MDL court.  Indeed, at the hearing on this motion, counsel

for the defendant appeared to agree that the defendant's concern on this "probate" issue was caused

by the language in footnote 3, not anything else in the complaint.  Hrg. Trans. [ECF No. 37] 55:14–

56:23.

The plaintiffs argued both in their briefing and at oral argument that the inclusion of

footnote 3 in their complaint was not intended to raise any claims with respect to the probate

proceedings or the estate's disallowance of their probate claim.  Looking at the complaint, the

Court is inclined to agree.  The complaint, footnote included, does not ask the Court to overturn

the disallowance of the probate claim, nor does the complaint ask for an injunction against the

probate court—indeed, there is no state court action here to challenge and no action against a state

court is being sought.  Moreover, the mere fact that the decedent's estate is a party to the case, or

that probate proceedings have commenced elsewhere, does not automatically render the case

barred by the probate exception to federal jurisdiction.  See <u>Marshall v. Marshall</u>, 547 U.S. 293,

311–12 (2006) ("[T]he probate exception reserves to state probate courts the probate or annulment

of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.  But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.").

In short, the plaintiffs do not appear to be raising any claims that a federal court cannot adjudicate or asking for any relief that a federal court cannot give, which is presumably why the defendant has not raised these same arguments based on <u>Rooker-Feldman</u> or the probate exception against the identical complaint before the MDL court, in which the Hills estate is also a defendant. The Court agrees in the abstract with the defendant that the question of whether the plaintiffs have properly asserted a probate claim against the Hills estate in the D.C. probate court is a matter for the probate court to decide, but that is not the question presented by this complaint.  Indeed, it is not even relevant at this time: whether the plaintiffs may assert a claim in probate against the estate goes to the plaintiffs' ability to <u>recover</u> on a judgment against the estate—a judgment which they do not yet have, either in this case or in the MDL case.[3]  The complaint instead raises issues of <u>liability</u> in the first instance: whether the defendant is liable for the plaintiffs' injuries arising out of Chiquita's alleged payments to the AUC.  Arguments about recovery through probate are not an appropriate challenge to federal jurisdiction over these liability claims.

### B.  SERVICE OF PROCESS

The defendant also argues that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) because the plaintiffs did not properly serve the complaint and the summons within the 120 days then required by Rule 4(m).[4]  Rule 4 provided:

---

[3] The Court expresses no view as to whether, in filing this complaint, the plaintiffs have properly preserved any future <u>probate</u> claim against the estate under the D.C. Probate Code.

[4] At the time this complaint was filed in September 2015, the time period for service was 120 days after the date the complaint was filed.  The amendments to the Federal Rules which took effect December 1, 2015 changed the

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  Where service of the complaint is challenged, the plaintiff bears the burden of establishing compliance with the relevant provisions of Rule 4 and any other applicable law. Light v. Wolf, 816 F.2d 746, 751 (D.C. Cir. 1987).  Here, the complaint was filed on September 29, 2015, making the deadline for service January 27, 2016.  Compl. [ECF No. 1].  Plaintiffs submitted a declaration indicating that a copy of the complaint was mailed to defense counsel the day it was filed, which the defendant does not appear to dispute.  See Decl. of Upasana Khatri [ECF No. 15] ¶ 2.  Formal service, however, was not completed until March 23, 2016, well past the 120-day deadline.  Mot. to Dismiss [ECF No. 8-1] at 21.

The formal service requirement is not a "mere technicality"; a court "lacks personal jurisdiction over a defendant until service has been properly effected." Bloem v. Unknown U.S. Dep't of the Interior Emps., 24 F. Supp. 3d 97, 102 (D.D.C. 2014).  Rule 4 mandates, however, that an extension of time be granted where good cause for the delay in service is shown, and in this Circuit, Rule 4(m) has been interpreted to give courts discretion to extend the time even where good cause is not shown.  See Mann v. Castiel, 681 F.3d 368, 375–76 (D.C. Cir. 2012) ("The Advisory Committee note for Rule 4(m) instructs that the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'"); Bloem, 24 F. Supp. 3d at 101–02; Rynn v. Jaffe, 457 F. Supp. 2d 22, 24 (D.D.C. 2006); Johnson

---

time for service from 120 days to 90 days.  These amendments govern pending actions only "insofar as just and practicable."   See Order Amending the Federal Rules of Civil Procedure (Apr. 29, 2015), available at https://www.supremecourt.gov/orders/courtorders/frcv15(update)_1823.pdf.   For the reasons explained here, however, the result on the service of process issue is the same whether the Court applies the 120-day or 90-day time period. See, e.g., Bryant v. Citigroup, Inc., No. 5:15-cv-411 (MTT), 2016 WL 1056575, at *2 n.3 (M.D. Ga. March 16, 2016); Carlos v. York Cnty., No. 1:15-cv-01994, 2016 WL 1706163, at *4 n.5 (M.D. Pa. Apr. 27, 2016).

v. Ashcroft, No. 04-1158 (RMU), 2005 WL 2073752, at *3 (D.D.C. Aug. 17, 2005); see also 4B

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1137 (4th ed. 2016)

("[T]he overwhelming majority of federal courts and dicta from the Supreme Court embrace the

view that a district court has discretion . . . to allow a plaintiff to cure a defect in service of process

even in the absence of good cause.").   Good cause exists where "some outside factor . . . rather

than inadvertence or negligence, prevented service."   Mann, 681 F.3d at 374 (internal quotation

marks omitted) (quoting Lepone-Dempsey v. Carroll Cty. Com'rs, 476 F.3d 1277, 1281 (11th Cir.

2007)).   Other relevant factors to consider in extending the time for service include: whether the

statute of limitations would bar refiling of the complaint, whether the defendants attempted to

evade service, whether the plaintiffs are pro se litigants, and whether the plaintiffs diligently

attempted to effect service.   See, e.g., id. at 376.

Here, the Court need not decide whether the plaintiffs have demonstrated good cause

mandating an extension of the time for service, because they have shown sufficient reason for the

court to exercise its discretion to extend the time.   The plaintiffs submitted a declaration explaining

that counsel was informed by the Clerk's Office that a summons could not issue until the Court

ruled on the plaintiffs' motion to proceed pseudonymously, at which time the plaintiffs would have

to refile their complaint and request issuance of the summons.   Decl. of Upasana Khatri [ECF No.

15] ¶ 3.   The plaintiffs filed the motion to proceed pseudonymously on October 2, 2015 [ECF No.

3], but the Court did not rule on it until five months later, see March 3, 2016 Minute Order.   On

March 14, shortly after the Court ruled on the motion, the plaintiffs again contacted the Clerk's

Office and were instructed to file a request for a summons, which the plaintiffs did the same day.

Decl. of Upasana Khatri [ECF No. 15] ¶ 7; Request for Summons [ECF No. 5].   The summons

issued the next day, and service was accomplished eight days later, on March 23. See Summons [ECF No. 6]; Mot. to Dismiss [ECF No. 8-1] at 21.

The defendant argues that we have only the plaintiffs' word regarding the communications with the Clerk's Office, but unlike the case on which the defendant relies, United States ex rel. Cody v. Computer Sciences Corp., 246 F.R.D. 22 (D.D.C. 2007), the plaintiffs here have submitted a declaration detailing these communications in support of their opposition to the motion to dismiss. Cf. Cody, 246 F.R.D. at 27 ("Although counsel for the plaintiffs assert in their opposition . . . that he had attached to the opposition an affidavit detailing his communications with the Clerk's office . . . no such affidavit has ever been presented to the Court. . . . [T]he plaintiffs have not substantiated their allegation."). The defendant has not presented any reason for the Court to disbelieve this evidence, and the plaintiffs' assertions are consistent with what appears on the docket. Thus, it appears that the plaintiffs were diligent in pursuing issuance and service of the summons, and that the Court may bear some responsibility for the delay. See, e.g., Lujano v. Omaha Public Power Dist., 30 F.3d 1032, 1035 (8th Cir. 1994) (finding good cause where magistrate judge failed to issue summons within 120 days and plaintiff was diligent in inquiring about status of his case). The defendant, meanwhile, was not prejudiced by the delay, having received a copy of the complaint the day it was filed—indeed, the defendant participated in this case prior to service of the summons, see Stipulation Re: Rule 23 [ECF No. 4]. See Rynn, 457 F. Supp.2d at 24 (considering prejudice to the defendant in finding that extension of time was warranted); Ashcroft, 2005 WL 2073752, at *3 (noting prejudice to the defendant as a factor to consider).

The plaintiffs, on the other hand, likely would be prejudiced by a dismissal. The statute of limitations has now run on many of their claims, and although the plaintiffs seek equitable tolling

based on a variety of circumstances (including Chiquita's concealment of its activities), see Pls.' Opp'n [ECF No. 14] at 27–36, further delay resulting from dismissal would likely hinder their ability to refile their claims and toll the statute of limitations.  See, e.g., Mann, 681 F.3d at 376 (identifying a statute of limitations bar as a relevant factor); Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009) (noting that an extension of time is appropriate where statute of limitations would prevent refiling of the complaint); Rhodan v. Schofield, No. 04-2158 (TWT), 2007 WL 1810147, at *5 (N.D. Ga. June 19, 2007) (expiration of statute of limitations was sufficient to establish good cause for an extension); Tafler v. District of Columbia, No. 05-1563 (PLF), 2006 WL 3254491, at *7 (D.D.C. Nov. 8, 2006) (granting extension where plaintiff's error in serving process was "reasonable" and where statute of limitations would bar plaintiff from refiling).  Because jurisdiction over the defendant is contested in the MDL court, the plaintiffs could be left without a forum if this case is dismissed and they are unable to refile.

In light of these considerations, the Court will not dismiss the complaint for untimely service.  An extension of time is appropriate, and the Court will retroactively extend the time for service and deem the March 23, 2016 service timely under Rule 4(m).  See Tafler, 2006 WL 3254491, at *5 (granting extension retroactively); Goza-Gonzalez v. South American Restaurants Corp., 293 F.R.D. 75, 76 (D.P.R. 2013) (starting 120-day filing period on day plaintiff received summons from clerk's office).

## C.  FIRST-FILED RULE

The fact remains, however, that the complaint the plaintiffs have filed in this district is duplicative of the complaint already being litigated in the MDL court, although there are other defendants also named in the MDL action.  The defendant thus argues that the complaint should be dismissed under the so-called "first-filed" rule.  Under this rule, district courts have discretion

to stay or dismiss a pending action in favor of a factually-related action in another forum.  See, e.g., Handy v. Shaw, 325 F.3d 346, 349 (D.C. Cir. 2003).  Moreover, "[t]he usual rule in this circuit has been that where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first."   UtahAmerican Energy, Inc. v. U.S. Dep't of Labor, 685 F.3d 1118, 1124 (D.C. Cir. 2012) (internal quotation marks omitted).  The first-filed rule, however, should not be applied by rote.  Id.  In deciding whether to allow a second-filed case to proceed despite the pendency of a parallel case elsewhere, district courts may also consider equitable factors such as how close together in time the actions were filed, whether the first-filing plaintiff filed a declaratory judgment action in the face of an impending suit, whether the first action was filed in the midst of good-faith settlement discussions, how far each case has progressed, and the respective convenience and efficiency of each forum.  See, e.g., Stone & Webster, Inc. v. Georgia Power Co., 965 F. Supp. 2d 56, 60–61 (D.D.C. 2013) (discussing equitable factors to be considered).

Here, there is little doubt that application of the first-filed rule is appropriate.  The plaintiffs acknowledge that this complaint is duplicative, Compl. [ECF No. 1] at 3 n.3, and there are no equitable factors that weigh in favor of allowing litigation to proceed in this case now.  The cases against Chiquita and its officers were consolidated into a multi-district litigation precisely for purposes of efficiency, and the MDL court has already lived with these same claims for eight years. Litigating this case would undermine the efficiency that has already been achieved by consolidating these cases, and would likely raise troubling issues of preclusion in the MDL case. Thus, the only issue to be decided is whether, as a result of the first-filed rule, this case should be stayed pending developments in the MDL case or instead dismissed.  Unsurprisingly, the defendant

argues that a stay is unnecessary, and that dismissal is proper because "there will be nothing left of plaintiffs' claims" once the MDL action concludes.  Mot. to Dismiss [ECF No. 8-1] at 21.

But there are equitable factors here that weigh in favor of a stay rather than outright dismissal.  The defendant challenges personal jurisdiction in the MDL action.  <u>See</u> MDL Mot. to Dismiss [ECF No. 9-16].  Hence, if that case is dismissed on personal jurisdiction grounds, dismissal here would leave the plaintiffs without a forum and they would be further prejudiced by the continued running of the statute of limitations on their claims.  <u>See</u> Pls.' Opp'n [ECF No. 14] at 19–20.  But the defendant does not challenge personal jurisdiction in this district, making this district a viable alternative forum.  Several circuits have held that it is an abuse of discretion for a district court to dismiss a second-filed case where jurisdiction is challenged in the first-filed action, or where dismissal would otherwise adversely affect a party's interests.  <u>See, e.g.</u>, <u>Baatz v. Columbia Gas Transmission, LLC</u>, 814 F.3d 785, 795 (6th Cir. 2016) ("The non-trivial possibility of a successful jurisdictional challenge suggests that this case should not have been dismissed."); <u>Alltrade, Inc. v. Uniweld Prods., Inc.</u>, 946 F.2d 622, 629 (9th Cir. 1991) ("[W]here the first-filed action presents a likelihood of dismissal, the second-filed suit should be stayed, rather than dismissed."); <u>Asset Allocation & Mgmt. Co. v. W. Emp'rs. Ins. Co.</u>, 892 F.2d 566, 571 (7th Cir. 1990) ("[W]hy take chances?  It is simpler just to stay the second suit.").

Accordingly, the Court will stay rather than dismiss this action, pending developments in the MDL case.  Likewise, the Court will not address at this time those arguments for dismissal that are duplicative of the defendant's arguments raised before the MDL court.

### III. <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that defendant's motion to dismiss is **DENIED**; it is further

**ORDERED** that proceedings in this case are **STAYED** pending further order of the Court; and it is further

**ORDERED** that the parties shall submit a joint status report every 90 days updating the Court on the ongoing proceedings in the multi-district litigation.

**SO ORDERED.**

_____
/s/
JOHN D. BATES
United States District Judge

Dated:   November 15, 2016